**Case No. 25-4115**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

BRIDGER LEE JERNSON, SINGULARISM, AND PSYCHE HEALING AND BRIDGING, LLC,

*Plaintiff-Appellees*,

---v.---

UTAH COUNTY, PROVO CITY, AND JEFFREY GRAY,

*Defendant-Appellants*.

On appeal from the United States District Court for the District of Utah
The Honorable Jill N. Parrish, No. 2:24-cv-00887-JNP-CMR

---

**BRIEF OF DEJA CORREIA AND NATALIE KOSKI-KARELL
AS *AMICUS CURIAE* IN SUPPORT OF APPELLEES BRIEF AND OF
AFFIRMANCE OF THE DISTRICT COURT'S DECISION**

---

Respectfully Submitted,

Deja Correia, Esq.
AMICUS CURIAE
4150 Voltaire Street
SAN DIEGO, CA 92107
(619) 251-1432
deja@correia.law

Natalie Koski-Karell, Esq.
AMICUS CURIAE
7284 Princeton Avenue
La Mesa, California 91942
(415) 420-4245
nskoskikarell@gmail.com

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................................1

TABLE OF AUTHORITIES ......................................................................................2

GLOSSARY OF TERMS...........................................................................................5

STATEMENT OF AMICUS CURIAE ......................................................................7

SUMMARY OF THE ARGUMENT .........................................................................9

INTRODUCTION....................................................................................................11

ARGUMENT ...........................................................................................................12

  I.   THE DISTRICT COURT CORRECTLY APPLIED STRICT SCRUTINY BECAUSE UTAH'S CSA LACKS GENERAL APPLICABILITY ...........................12

    A.   Post-Fulton/Tandon Framework Governs, Not Smith Alone .........................12

    B.   Utah's Psilocybin Act Exemption.................................................................13

    C.   Comparative Risks Analysis Supports Religious Accommodation .................14

  II.   LEGISLATIVE MATERIALS DEMONSTRATE LESS RESTRICTIVE MEANS EXIST ...........................................................................................................16

    A.   S.B. 266 and Supporting Legislative Record.................................................16

    B.   Utah Mental Illness Psychotherapy Drug Task Force Findings .....................17

    C.   Congressional Recognition of Therapeutic Benefits .....................................19

  III.   UTAH CONSTITUTIONAL FRAMEWORK PROVIDES BROADER PROTECTION THAN FEDERAL LAW ....................................................................20

    A.   Article I, Section 4 "No Preference" Clause .................................................20

    B.   Utah RFRA's Strict Scrutiny Standard.........................................................22

  IV.   Procedural Issues and the Dismissal of Criminal Charges...........................23

    A.   Impact on Dismissal on Compelling Government Interest ............................23

CONCLUSION ........................................................................................................24

CERTIFICATE OF COMPLIANCE........................................................................26

CERTIFICATE OF DIGITAL SUBMISSION........................................................27

CERTIFICATE OF SERVICE ................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Doe v. Bd. of Regents of the Univ. of Colo.,*
  100 F.4th 1251 (10th Cir. 2024).............................................................................13

*Emp. Div., Dept. of Human Res. of Or. v. Smith*,
  49 U.S. 872  (1990).............................................................................................12

*Fulton v. City of Philadelphia*,
  593 U.S. 522 (2021)...................................................................................12, 13, 14

*Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,*
  546 U.S. 418 (2006)............................................................................................12

*Tandon v. Newsom*,
  593 U.S. 61 (2021)........................................................................................12, 14

*United States v. Seeger*,
  380 U.S. 163 (1965).............................................................................................23

*Univ. of Great Falls v. NLRB*,
  278 F.3d 1335 (D.C. Cir. 2002) ...........................................................................21

**Statutes**

42 U.S.C. § 2000bb-1..........................................................................................5, 12

U.S. Const. .......................................................................10, 11, 12, 21, 23, 24

Utah Code Ann. § 58-37-1 ...........................................................................5, 9, 16, 21

Utah Code Ann. § 58-37-3.5 .........................................................................5, 13, 15

Utah Code § 58-37-6 ...................................................................................................14

Utah Code Ann. § 58-60-107 ...............................................................................5, 15

Utah Code Ann. § 63-G-33-101 ...................................................................................22

Utah Const. .......................................................................................9, 16, 20, 24

**Other Authorities**

Ana Esteves Ferreira & Paulo Reis-Pina, *Exploring the Role of Psychedelic-Assisted Therapy in Enhancing Spirituality and Mystical Experiences in Patients with Life-Threatening Illnesses: A Systematic Review*,
189 J. PSYCHOSOM. RES. 112020 (2025)...................................................................17

Brief of Plaintiff-Appellee at 36-37, Bridger Lee Jensen, et al. v. Utah County, et al.,
No. 25-4115 (10th Cir. Feb. 11, 2026)..............................................................9, 23

*House Remarks Supporting VA Psychedelic Therapy Amendment*,
Congressional Record H3616 (June 4, 2024) (statement of Rep. Lou Correa). ............20

Josh Hardman, *Senator Kirk Cullimore on Utah's MDMA and Psilocybin Pilot Program,* Psychedelic Alpha: Interview (April 3, 2024),
https://psychedelicalpha.com/news/senator-kirk-cullimore-on-utahs-mdma-and-psilocybin-pilot-program. .................................................................................16

Kayla M. Baker, et al*., An Integrative Review of Measures of Spirituality in Experimental Studies of Psilocybin in Serious Illness Populations*,
40 AM. J. HOSPICE & PALLIATIVE MED. 1261 (2023) .....................................................17

Luke Okamuro et al., *Spirituality in Serious Illness Education: A Narrative Review of Medical School Curricula From 2000 to 2024*, 29 PERM. J. 126 (2025). ...................17

Press Release, *Former Navy SEAL Morgan Luttrell bashes FDA after agency delivers blow to psychedelic medicine which saved his own life amid PTSD*

*struggle: 'It's a poor decision'*, (June 6, 2024), https://luttrell.house.gov/media/in-the-news/former-navy-seal-morgan-luttrell-bashes-fda-after-agency-delivers-blow...........20

Press Release, Lou Correa, Representative, House of Representatives, Reps. Correa, *Bergman Re-Launch Bipartisan Caucus To Explore Psychedelic Research For Mental Health* (Mar. 3, 2023), https://correa.house.gov/news/press-releases/reps-correa-bergman-re-launch-bipartisan-caucus-to-explore-psychedelic-research-for-mental-health. ....................................................................................................................20

Roland R. Griffiths, et al., *Psilocybin Occasioned Mystical-Type Experiences: Immediate and Persisting Dose-Related Effects*, 218 PSYCHOPHARMACOLOGY 649 (2011)...........17

University of Ottawa: *Psychedelics & Spirituality Microprogram* (Canada, In-person) https://catalogue.uottawa.ca/en/graduate/microprogram-psychedelics-spirituality-studies/#overviewtext ..................................................................................................19

Utah Dep't of Health, Mental Illness Psychotherapy Drug Task Force Report, H. 64, 3rd Sess., (2022). ......................................................................5, 6, 9, 11, 18, 19

**Rules**

10th Cir. R. 29.2 ................................................................................................................7

Fed. R. App. P. 29.............................................................................................................7

Fed. R. App. P. 32...........................................................................................................26

## GLOSSARY OF TERMS

**Clergy Exemption**: That exemption of clergy from the requirement to hold medical licensure in order to provide mental health therapy under Utah Mental Health Professional Practice Act, codified as Utah Code § 58-60-107(2)(b).

**Congressional Psychedelics Advancing Therapies (PATH) Caucus**. A bipartisan group of U.S. lawmakers formed in 2022 to promote research into the therapeutic potential of psychedelic and entactogenic drugs for mental health conditions. It was formerly known as the Congressional Psychedelics Advancing Clinical Treatments (PACT) Caucus.

**Federal CSA**: The federal Controlled Substances Act, codified as 21 U.S.C. § 811 *et seq.*

**The FDA**: The United States Food and Drug Administration.

**The government**: Collectively denotes Defendants-Appellees Utah County, Provo City, and Jeffrey Gray.

**RFRA**: The federal Religious Freedom Restoration Act, codified as 42 U.S.C. § 2000bb-1 *et seq.*

**Singularism**: Collectively denotes Plaintiffs-Appellants Bridger Lee Jensen, Singularism, and Psyche Healing and Bridging, LLC.

**UCSA**: Utah Controlled Substances Act, codified as Utah Code § 58-37-1 *et seq.*

**Psilocybin**: A naturally occurring tryptamine alkaloid compound found in numerous species of mushrooms or fungi with hallucinogenic and serotonergic effects, used for therapeutic and sacramental religious purposes.

**Psilocybin Act**: Utah's S.B. 266 Medical Amendments (2024), codified within the Utah Controlled Substances Act as Utah Code § 58-37-3.5.

**URFRA**: Utah Religious Freedom Restoration Act (2024), codified as Utah Code § 63G-33-101 *et seq.*

**Utah Mental Illness Psychotherapy Drug Task Force.** A legislative body created in 2022 under Utah House Bill 167, tasked with studying, evaluating, and making recommendations on the use of controlled substances (specifically psychedelics like MDMA and psilocybin) as tools for mental health treatment.

**Utah Mental Illness Psychotherapy Drug Task Force Report.** The 2022 report generated by the Utah Mental Illness Psychotherapy Drug Task Force to make recommendations to legislators on the safety, efficacy, best practices, and history regarding the use of controlled substances (specifically psychedelics like MDMA and psilocybin) as tools for mental health treatment.

## STATEMENT OF AMICUS CURIAE

Pursuant to Federal Rule of Appellate Procedure 29(a) and 10th Circuit Rule 29.2, amici curiae Deja Correia, Esq. and Natalie Koski-Karell, Esq. respectfully submit this brief in support of Appellees and in Affirmance of the District Court's decision. Deja Correia, Esq., and Natalie Koski-Karell, Esq. file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure and all parties to the appeal have consented to the filing of this brief.

Amici Deja Correia, Esq., and Natalie Koski-Karell, Esq. file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure and all parties to the appeal have consented to the filing of this brief.

**Authorship and Funding.** No party or party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparing or submitting this brief. No person other than amici curiae contributed money intended to fund the preparation or submission of this brief.

**Interest of Amici Curiae.** Amici are attorneys specializing in psychedelic law and policy with extensive experience in regulatory frameworks governing controlled substances in medical, research, and religious contexts. Ms. Correia represents organizations engaging in psychedelic assisted therapy, Schedule I drug researchers and manufacturers, entities working with under the oversight of Drug Enforcement Administration, religious practitioners, and holds certification in

7

psychedelic-assisted therapies and research. Ms. Koski-Karell has engaged in drug policy work since 2008, served as a legal apprentice under the Director of Policy (now Co-Executive Director) of the Multidisciplinary Association for Psychedelic Studies ("MAPS"), and is currently volunteering with the New Mexico Psilocybin Policy Working Group assisting in the development of the regulatory framework for the medical use of psilocybin in that state. Both are founding members of the Psychedelic Bar Association.

Amici have a unique interest in ensuring that emerging psychedelic regulatory frameworks comply with constitutional requirements for religious neutrality and equal treatment. Their experience in the intersection of controlled substances regulation, medical oversight, and religious accommodation provides the Court with specialized knowledge not available from the parties' briefs.

## SUMMARY OF THE ARGUMENT

The District Court correctly applied strict scrutiny to Utah Controlled Substances Act because it lacks general applicability under the framework established in recent Supreme Court decisions. Utah Code Ann. § 58-37-1. et seq. Utah's Controlled Substances Act ("UCSA"), as amended by Utah's Senate Bill 266 ("S.B. 266"), titled "Medical Amendments" and also known as the "Psilocybin Act," grants preferential treatment and secular exemptions for medical use, which triggers strict scrutiny when religious practices are burdened. Utah Code Ann. § 58-37-1. et seq. Legislative materials, including those surrounding the passage of S.B. 266 and the 2022 Utah Mental Illness Psychotherapy Drug Task Force Report, demonstrate that less restrictive means to achieve the government's interests exist. Utah Code Ann. § 58-37-1. et seq.; Utah Dep't. of Health, Mental Illness Psychotherapy Drug Task Force Report, H. 64, 3rd Sess., (2022). Additionally, Utah's Constitution provides broader protections for religious exercise than the federal First Amendment, further supporting the need for accommodation. Utah Const. art. 1 § 4. Finally, the dismissal of criminal charges by the state court as a result of the failure of the government to file an opposition, and the failure of the government to appeal the dismissal, as noted in Appellee's brief, undermines the government's claim of a compelling interest in prosecution. Brief of Plaintiff-Appellee at 36-37, Bridger Lee Jensen, et al. v. Utah County, et al., No. 25-4115 (10th Cir. Feb. 11, 2026).

If the District Court's holding is left in place, such action will uphold the religious protections the United States Constitution and Utah lawmakers sought to deliver to practitioners and organizations and is likely to remove significant challenges and barriers unreasonably imposed upon minority religions.

## **INTRODUCTION**

This amicus brief assists the Court by providing specialized expertise in three areas not comprehensively addressed in the parties' briefs: (1) analysis of Utah's legislative record regarding Senate Bill 266 and the Utah Mental Illness Psychotherapy Drug Task Force Report, which demonstrates legislative recognition that psilocybin can be safely administered outside traditional medical settings; (2) comparative analysis of regulatory frameworks governing controlled substances in medical versus religious contexts, drawing on amici's experience with federal Drug Enforcement Administration exemption processes; and (3) synthesis of emerging scientific literature on risk mitigation in psychedelic administration that informs the constitutional analysis of comparable secular and religious activities.

Rather than rearguing the parties' constitutional claims, amici provide the Court with legislative facts and regulatory expertise that illuminate the narrow question of whether Utah's medical exemption creates secular preferences that trigger strict scrutiny under the Free Exercise Clause. This analysis draws on amici's practical experience in developing compliance frameworks for both medical and religious use of controlled substances under federal oversight.

**ARGUMENT**

**I.  THE DISTRICT COURT CORRECTLY APPLIED STRICT SCRUTINY BECAUSE UTAH'S CSA LACKS GENERAL APPLICABILITY**

### A. Post-Fulton/Tandon Framework Governs, Not Smith Alone

Under the Free Exercise Clause of the First Amendment, laws that are "generally applicable" are subject to rational basis review, even if they incidentally burden religious exercise, as established in *Smith*. U.S. Const.; *Emp. Div. v. Smith*, 49 U.S. 872, 878-82, 890 (1990). Following *Smith*, Congress enacted the Religious Freedom Restoration Act of 1993 ("RFRA") prohibiting the government from "substantially burdening" the exercise of religion even where a law is generally applicable. 42 U.S.C. § 2000bb-1, et seq. However, the Supreme Court's subsequent decisions in *Fulton* and *Tandon* have refined the analysis of general applicability, requiring strict scrutiny whenever a law treats comparable secular activities more favorably than religious exercise, and the cases override *Smith*. *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021); *Tandon v. Newsom*, 593 U.S. 61, 62 (2021).

UCSA, as amended by the Psilocybin Act, permits secular medical use of psilocybin while categorically prohibiting religious use, thereby failing the general applicability test. *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,* 546 U.S. 418, 430-435 (2006) (holding that some permitted exemptions to the CSA negated an argument that other exemptions could not be made). The Tenth Circuit

has consistently applied this principle, including in concluding that "the government may not test the sincerity of… religious beliefs by judging whether [those] beliefs are doctrinally coherent or legitimate in the eyes of the government." *Doe v. Bd. of Regents of the Univ. of Colo.,* 100 F.4th 1251, 1256 (10th Cir. 2024). This Court held in *Doe,* that "a government employer" may not "discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones." *Id.* The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless of whether any exceptions have been given, because it invites the government to decide which reasons for not complying with the policy are worthy of solicitude. *Fulton,* 593 U.S. at 523. This principle directly applies to Utah County's policy structure, which provides discretionary exemption mechanisms that require case-by-case evaluation of religious claims.

### B. Utah's Psilocybin Act Exemption

The Psilocybin Act exemption under S.B. 266, allows healthcare systems to develop behavioral health treatment programs using psilocybin and 3, 4-methylenedioxy-methylamphetamine ("MDMA"), provided the drugs are in United States Food and Drug Administration ("FDA") Phase 3 trials and used under strict supervision. Utah Code Ann. § 58-37-3.5. The exemption creates a discretionary licensing authority for healthcare organizations to administer controlled substances

13

for medical purposes while categorically denying religious exemptions and renders the law not generally applicable under both the secular preference and individualized exemption tests. *Id*. These programs are authorized to administer psilocybin under broad discretion, with minimal restrictions on sourcing, testing, or chain-of-custody requirements. *Id.*

This secular exemption undermines the government's asserted interests in preventing drug abuse and ensuring public health, by demonstrating the government can and will accommodate psilocybin use in controlled settings, undermining its own argument that religious use poses unique risks. As the Supreme Court held, the government cannot "assume the worst" for religious exercise while "assuming the best" for secular activities. *Tandon*, 593 U.S. at 64.

### C. Comparative Risks Analysis Supports Religious Accommodation

Utah Code § 58-37-6(2)(d) grants the Utah Division of Professional Licensing discretion to waive medical licensure requirements for psilocybin use if consistent with public health and safety. This creates a formal mechanism for individualized exemptions, which must be extended to religious use under *Fulton* and *Tandon*. Under *Tandon*, the key inquiry is whether secular conduct undermines the government's interests in a similar way as the prohibited religious conduct. *Tandon*, 593 U.S. at 62. The risks associated with medical exemptions, such as tainted substances, drug interactions, and recreational abuse, are comparable to those

associated with Singularism's religious use. Singularism's safety protocols, including screening, supervision, and emergency measures, mirror those required for medical exemptions, further demonstrating the comparability of risks, as further described herein. App-5:126 – 127.

Utah's Psilocybin Act authorizes a secular use while categorically excluding religiously motivated uses that are functionally aligned with the same interests in safety, supervision, and participant well-being. Utah Code Ann. § 58-37-3.5. The Utah Division of Professional Licensing already recognized Singularism's religious use of psilocybin. App-1:055. After Mr. Jensen's therapist license expired, the Division received a complaint that he was practicing mental-health therapy without a license. App-1:055. He explained the basics of Singularism and asserted that he qualified for the clergy exemption, which allows "a recognized member of the clergy" to provide mental-health therapy, among other treatments, without a license "while functioning in a ministerial capacity." *Id.;* App-4:117; Utah Code Ann. § 58-60-107(2)(b). The Division's investigator subsequently closed the complaint as unfounded. App-1:055.

This example demonstrates that Utah already permits religiously grounded exemptions where risk can be managed and highlights the incongruity of allowing secular exemptions under S.B. 266 while denying parallel accommodations for sincere religious use. Utah Code Ann. § 58-37-1. et seq. Because the government

15

has already determined that psychedelic use can be safely supervised and integrated in a secular medical setting, denying equivalent pathways for religious practice—such as Singularism's individualized, spiritually guided model—reflects a preference for secular frameworks that is difficult to reconcile with both the no-preference clause of the Utah Constitution and URFRA, as examined in Section III herein.

## II.    LEGISLATIVE MATERIALS DEMONSTRATE LESS RESTRICTIVE MEANS EXIST

### A. S.B. 266 and Supporting Legislative Record

S.B. 266 was enacted to address Utah's mental health crisis, particularly high rates of depression and suicide. Utah Code Ann. § 58-37-1. et seq. The bill's sponsor, Senator Kirk Cullimore, emphasized the need for innovative solutions, including psilocybin-assisted therapy, to address these issues.[1]

Under S.B. 266, authority to administer psychedelics is vested exclusively in licensed medical professionals within a clinical model. Utah Code Ann. § 58-37-1. et seq. Amici urges the Court to consider whether this allocation adequately accounts for the nature of the experiences of such substances reliably occasion. Research

---

[1] Josh Hardman, *Senator Kirk Cullimore on Utah's MDMA and Psilocybin Pilot Program,* Psychedelic Alpha: Interview (April 3, 2024), https://psychedelicalpha.com/news/senator-kirk-cullimore-on-utahs-mdma-and-psilocybin-pilot-program.

indicates that psychedelic-assisted sessions frequently involve profound spiritual, existential, religious, and theological content, often central to participants' meaning-making and integration.[2] While medical professionals are trained in diagnosis, pharmacology, and risk management, their education does not uniformly include the cultural or spiritual competency necessary to contextualize and support such experiences.[3] By contrast, religious and spiritual communities—including those emphasizing individualized, non-dogmatic exploration like Singularism—are structured to hold space for transcendence, moral insight, and personal revelation. Limiting lawful psychedelic use to biomedical settings risks marginalizing dimensions of human experience that the First Amendment protects. URFRA was likewise adopted to protect such exercise.

### B. Utah Mental Illness Psychotherapy Drug Task Force Findings

The Utah Department of Health and Human Services' Mental Illness Psychotherapy Drug Task Force, convened by the Legislature to assess the emerging

---

[2] Roland R. Griffiths, et al., *Psilocybin Occasioned Mystical-Type Experiences: Immediate and Persisting Dose-Related Effects*, 218 PSYCHOPHARMACOLOGY 649 (2011); Kayla M. Baker, et al*., An Integrative Review of Measures of Spirituality in Experimental Studies of Psilocybin in Serious Illness Populations*, 40 AM. J. HOSPICE & PALLIATIVE MED. 1261 (2023); Ana Esteves Ferreira & Paulo Reis-Pina, *Exploring the Role of Psychedelic-Assisted Therapy in Enhancing Spirituality and Mystical Experiences in Patients with Life-Threatening Illnesses: A Systematic Review*, 189 J. PSYCHOSOM. RES. 112020 (2025).

[3] Luke Okamuro et al., *Spirituality in Serious Illness Education: A Narrative Review of Medical School Curricula From 2000 to 2024*, 29 PERM. J. 126 (2025).

evidence on psychedelic-assisted psychotherapy, concluded in a 2022 report that both psilocybin and MDMA demonstrate substantial therapeutic potential for treatment-resistant depression and post-traumatic stress disorder when administered in structured, controlled settings. Utah Dep't of Health & Hum. Servs., *Mental Illness Psychotherapy Drug Task Force Report*, H. 64, 3rd Sess., at 13-16 (Oct. 2022). Based on randomized controlled trials and systematic evidence reviews, the Task Force found that psilocybin-assisted psychotherapy may be more effective than placebo-assisted psychotherapy for treatment-resistant depression. *Id.* It also notes that psilocybin has a favorable safety profile when administered in controlled settings, including that data does not indicate "either psilocybin-naive or experienced individuals will develop dependence after exposure," that "psilocybin is Schedule I, indicating a potential for abuse. Animal studies (monkey) did not demonstrate this abuse potential," and that "there are no confirmed reports of overdose of pharmaceutical psilocybin," all of which counters the government's argument, and supports the position that less restrictive means exist to achieve the government's interests. *Id.* at 24-28.

In addition, the Report addresses the spiritual and religious aspect of treatment including the recommendation on preparations to invite patients engaging in the medical use of psychedelics to bring "spiritually meaningful items to sessions," but that "overt spiritual or religious iconography ***unless directed by the patient in***

18

***concordance with their own faith based traditions*** should be avoided," and that

psychedelics may cause spiritual experiences." *Id.* at 18, 31 (*emphasis added*).

Finally, one of the sources consulted and by the Task Force and cited by the Report

is a microprogram at the University of Ottawa focusing on the "spiritual, ritual, and

therapeutic uses of psychedelics" and the intersection of these disciplines.[4] *Id.* at 111.

### C. Congressional Recognition of Therapeutic Benefits

The federal, bipartisan Congressional Psychedelics Advancing Therapies

(PATH) Caucus has publicly recognized the therapeutic potential of psilocybin and

other psychedelic-assisted therapies for mental health conditions, including

depression, PTSD, and substance use disorders, further demonstrating that the

government's interests can be achieved without categorically prohibiting religious

use.[5] Members of Congress and representatives from veterans' organizations have

highlighted compelling testimony military veterans who experienced significant

---

[4] University of Ottawa: *Psychedelics & Spirituality Microprogram* (Canada, In-person) https://catalogue.uottawa.ca/en/graduate/microprogram-psychedelics-spirituality-studies/#overviewtext

[5] Press Release, Lou Correia, Representative, House of Representatives, Reps. Correa, *Bergman Re-Launch Bipartisan Caucus To Explore Psychedelic Research For Mental Health* (Mar. 3, 2023), https://correa.house.gov/news/press-releases/reps-correa-bergman-re-launch-bipartisan-caucus-to-explore-psychedelic-research-for-mental-health.

benefits from psilocybin treatment.[6] Additionally, legislative support for studying psychedelic therapies is rapidly growing, including a unanimously passed amendment to push the U.S. Department of Veterans Affairs to research the impact of psilocybin and MDMA on "invisible wounds" suffered by military veterans.[7]

Importantly, the PATH Caucus findings and related legislative support demonstrate that the government's compelling interests in safety, efficacy, and oversight can be satisfied without excluding bona fide religious uses of psychedelics.

## III.  UTAH CONSTITUTIONAL FRAMEWORK PROVIDES BROADER PROTECTION THAN FEDERAL LAW

### A. Article I, Section 4 "No Preference" Clause

Utah's Constitution explicitly prohibits discrimination or preference between religions, providing broader protections than the federal First Amendment. Utah Const. art I, § 4. This provision requires heightened scrutiny for laws that discriminate between secular and religious conduct, as does UCSA by permitting secular medical use while prohibiting religious use. *Id*; Utah Ann. Code § 58-37-1.

---

[6] Press Release, *Former Navy SEAL Morgan Luttrell bashes FDA after agency delivers blow to psychedelic medicine which saved his own life amid PTSD struggle: 'It's a poor decision'*, (June 6, 2024), https://luttrell.house.gov/media/in-the-news/former-navy-seal-morgan-luttrell-bashes-fda-after-agency-delivers-blow.

[7] *House Remarks Supporting VA Psychedelic Therapy Amendment*, Congressional Record H3616 (June 4, 2024) (statement of Rep. Lou Correa).

Singularism adopts a nuanced and restrained model: rather than imposing dogma, creed, or scripture, it encourages members to engage in guided, reflective experiences aimed at individual spiritual insight and integration. App-2:246; App-6:052. This approach mirrors clinically validated models in which spiritual meaning-making is personal and experiential, not institutional nor prescriptive. Emphasizing inward spiritual inquiry rather than externally mandated belief does not remove a practice from constitutional protection; such practices lie at the core of the Free Exercise Clause, protecting the liberty of individuals and communities to pursue spiritual understanding according to conscience.

A regulatory scheme that permits psychedelic use only within a secular medical framework while foreclosing sincere religious contexts is not narrowly tailored. It reflects a preference for one interpretive lens—biomedical—over others that are constitutionally protected and empirically germane to these substances. Appellants argue that Singularism's citations to scientific and medical research undermine their claim to religious protection. However, as noted by Appellee in the record, "an overlap between scientific and religious reasons for a practice 'cannot render th[ose] actions . . . any less religious.'" App-5:143 (*citing Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1346 (D.C. Cir. 2002).

**B. Utah RFRA's Strict Scrutiny Standard**

Utah's Religious Freedom Restoration Act ("URFRA") imposes a strict scrutiny standard for laws that burden religious exercise. Utah Code Ann. § 63-G-33-101. Strict scrutiny requires the government's interest in the law to be compelling, and that the law be narrowly tailored to achieve that objective. The government's failure to extend psilocybin exemptions to religious use violates this standard, and the record demonstrates the District Court carefully considered the relevant legal standards before granting the preliminary injunction under URFRA. *Id*.

By creating a bespoke regulatory pathway for medical professionals while denying comparable accommodation for sincere religious practice, the government does not act neutrally; it elevates a secular, biomedical model over religious and spiritual modes of engagement. Such allocation is constitutionally suspect where the government itself acknowledges that psychedelic use can be structured safely through training, preparation, controlled administration, and post-experience integration—elements not unique to clinical medicine and commonly present in religious and spiritual contexts.

Courts evaluating claims of religious exercise recognize that religion under the First Amendment is not limited to formal doctrine, scripture, or hierarchical clergy but may encompass individualized systems of spiritual meaning, ultimate

22

concern, and existential exploration. *See*, *United States v. Seeger*, 380 U.S. 163, 184 (1965). A substantial and growing body of peer-reviewed research demonstrates that spiritually integrated psychotherapies are effective and feasible, producing additive benefits in spiritually, existentially, religiously, and theologically relevant outcomes beyond those achieved by secular therapy alone. These outcomes, including increased sense of meaning, transcendence, moral insight, and connectedness, are consistently reported in controlled studies of psychedelic-assisted therapy.

The Free Exercise Clause does not permit the government to define away religious practice by recharacterizing inherently spiritual experiences as exclusively medical events. Where less restrictive alternatives exist—such as accommodation, exemption, or parallel regulatory pathways for bona fide religious use—the government must demonstrate why those alternatives are insufficient. Absent such a showing, medical exclusivity cannot satisfy strict scrutiny.

## IV.  Procedural Issues and the Dismissal of Criminal Charges

### A. Impact on Dismissal on Compelling Government Interest

As discussed herein, the dismissal of criminal charges by the state court as a result of the failure of the government to file an opposition, and the failure of the government to appeal the dismissal, as noted in the Appellee's Brief, undermines the government's claim of a compelling interest in prosecuting religious use of psilocybin. Brief of Plaintiff-Appellee at 36-37, Bridger Lee Jensen, et al. v. Utah

County, et al., No. 25-4115 (10th Cir. Feb. 11, 2026). The government's voluntary dismissal suggests that prosecution is not essential to achieving its interests in public health and safety.

## CONCLUSION

For all of the foregoing reasons, this Court should affirm the District Court's application of strict scrutiny, affirm its denial of the government's action to dismiss, and recognize that UCSA, as amended with exemptions, and as applied to religious use of psilocybin, fails the general applicability standard under First Amendment and the Utah Constitution.

Further, the Court should find UCSA, as amended by the Psilocybin Act exemption, violates the Free Exercise Clause of the First Amendment and Article I, Section 4 of the Utah Constitution by granting preferential treatment to secular medical and research-based uses of controlled substances while categorically denying religious uses. The legislative record and procedural history demonstrate that a less restrictive means to achieve the government's interest exists, and the dismissal of criminal charges by the state court as a result of the failure of the government to file an opposition, and the failure of the government to appeal the dismissal undermines the government's claim of a compelling interest in prosecution.

The Court should a instruct the District Court to apply the Psilocybin Act's exemptions to religious use.

Dated:        February 19, 2026

Respectfully submitted,

s/ _____*Deja Correia*_____
Deja Correia, Esq.
AMICUS CURIAE
4150 Voltaire Street
San Diego, California 92107
(619) 251-1432
deja@correia.law

s/ ___*Natalie Koski-Karell*___
Natalie Koski-Karell, Esq.
AMICUS CURIAE
7284 Princeton Avenue
La Mesa, California 91942
(415) 420-4245
nskoskikarell@gmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify:

1.    This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Rule 32(f), this document contains 3,625 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document was prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font.

Dated:      February 19, 2026

/s  *Deja Correia*_____
Deja Correia, Esq.
*AMICUS CURIAE*
4150 Voltaire Street
San Diego, California 92107
(619) 251-1432
deja@correia.law

**s/** __*Natalie Koski-Karell*_
Natalie Koski-Karell, Esq.
*AMICUS CURIAE*
7284 Princeton Avenue
La Mesa, California 91942
(415) 420-4245
nskoskikarell@gmail.com

26

# **CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that (1) all required privacy redactions have been made; (2) any paper copies of this document submitted to the Court are exact copies of the version filed electronically; and (3) the electronic submission was scanned for viruses and found to be virus free.

Dated:    February 19, 2026

/s  *Deja Correia*
Deja Correia, Esq.
AMICUS CURIAE
4150 Voltaire Street
San Diego, California 92107
(619) 251-1432
deja@correia.law

s/  *Natalie Koski-Karell*
Natalie Koski-Karell, Esq.
AMICUS CURIAE
7284 Princeton Avenue
La Mesa, California 91942
(415) 420-4245
nskoskikarell@gmail.com

27

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2026, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system, and that a true and correct copy of the foregoing was served on counsel of record via the CM/ECF system.

Dated: February 19, 2026

/s *Deja Correia*_____
Deja Correia, Esq.
*AMICUS CURIAE*
4150 Voltaire Street
San Diego, California 92107
(619) 251-1432
deja@correia.law