No. 25-4115

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

BRIDGER LEE JENSEN, SINGULARISM, AND PSYCHE HEALING AND BRIDGING, LLC,
*Plaintiffs - Appellees*,

v.

UTAH COUNTY, PROVO CITY, AND JEFFREY GRAY,
*Defendants-Appellants*.

_____

On appeal from the United States District Court, District of Utah,
The Honorable Jill N. Parrish, No. 2:24-cv-00887-JNP-CMR

_____

## REPLY BRIEF OF APPELLANTS

_____


Respectfully submitted,

Troy L. Booher
Caroline Anais Olsen
ZIMMERMAN BOOHER
341 South Main Street, Fourth Floor
Salt Lake City, Utah 84111
(801) 924-0200
tbooher@zbappeals.com
colsen@zbappeals.com

*Attorneys for Appellants Utah County,
Provo City, and Jeffrey Gray*

_____

**Oral Argument — May 12, 2026**


March 18, 2026

**Additional Counsel**

Mitchell A. Stephens
Justin L. James
Dillon P. Olson
JAMES DODGE RUSSELL & STEPHENS, P.C.
545 East 300 South
Salt Lake City, Utah 84102
(801) 363-6363
mstephens@jdrslaw.com
jjames@jdrslaw.com
dolson@jdrslaw.com

*Attorneys for Appellants Utah County and Jeffrey Gray*

J. Brian Jones
Gary D. Millward
Nicholas Muhlestein
Richard A. Roberts
PROVO CITY ATTORNEY'S OFFICE
445 W Center Street, Suite 300
Provo, Utah 84601
(801) 852-6140
bjones@provo.gov
gmillward@provo.gov
nmuhlestein@provo.gov
rroberts@provo.gov

*Attorneys for Appellant Provo City*

# Table of Contents

Glossary.................................................................................... viii

Introduction ....................................................................................1

Argument........................................................................................3

    1.     This Court Has Jurisdiction...............................................3

         1.1    Plaintiffs' waiver argument is baseless...................3

         1.2    This Court has inherent jurisdiction to review each issue on appeal .......................................................................4

    2.     Plaintiffs' First and Fourth Amendment Rights Were Not Violated .......................................................................10

         2.1    The Utah CSA is generally applicable...................10

               2.1.1  The use of psilocybin at Singularism is not comparable to its use under the medical exemption......11

               2.1.2  The CSA does not grant individualized exemptions.....18

         2.2    Plaintiffs concede their Fourth Amendment claim depends on their First Amendment Claim ............................21

    3.     This Court Must Vacate the Anti-Suit Injunction.............21

         3.1    Defendants did not waive *Younger* arguments ........22

         3.2    Abstention would further *Younger*'s twin goals.....25

         3.3    Plaintiffs offer no meaningful defense of the district court's *Younger* analysis .......................................................26

               3.3.1  Plaintiffs misstate the standard of review......26

               3.3.2  *Younger*'s exceptions do not apply...............28

Conclusion ....................................................................................29

Certificate of Compliance ...................................................................................31

Certificate of Digital Submission........................................................................32

Certificate of Service .........................................................................................33

## Table of Authorities

Cases

*303 Creative LLC v. Elenis,*
 6 F.4th 1160 (10th Cir. 2021) ....................................................................19, 20

*Ackerman v. ExxonMobil Corp.,*
 734 F.3d 237 (4th Cir. 2013) ...............................................................................6

*ACORN v. Municipality of Golden, Colorado,*
 744 F.2d 739 (10th Cir. 1984) ...........................................................................22

*Acosta v. Foreclosure Connection,*
 903 F.3d 1132 (10th Cir. 2018) .........................................................................29

*AmSouth Bank v. Dale,*
 386 F.3d 763 (6th Cir. 2004) ...............................................................................9

*Bailey v. State Farm Fire & Cas. Co.,*
 414 F.3d 1187 (10th Cir. 2005) .........................................................................26

*Barnes v. Allen,*
 No. 18-cv-0394, 2019 WL 653814  (N.D. Okla. Feb. 15, 2019) ......................24

*Brock v. Flowers Foods, Inc.,*
 121 F.4th 753 (10th Cir. 2024) ............................................................................9

*Brooks v. N.H. Sup. Ct.,*
 80 F.3d 633 (1st Cir. 1996)................................................................................27

*Brox v. Woods Hole,*
 164 F.4th 37 (1st Cir. 2026)...............................................................................17

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
 508 U.S. 520 (1993).................................................................................... 17-18

*Courthouse News Serv. v. N.M. Admin. Off. of the Courts,*
 53 F.4th 1245 (10th Cir. 2022) ..........................................................................26

*Cradle of Liberty Council, Inc. v. City of Philadelphia,*
 No. 08-cv-2429, 2009 WL 3921140 (E.D. Pa. Nov. 18, 2009)........................23

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986) .......................................................................9

*Diamond "D" Constr. Corp.* v. McGowan,
    282 F.3d 191 (2d Cir. 2002) ......................................................................27

*Does 1-6 v. Mills*,
    16 F.4th 20 (1st Cir. 2021)........................................................................17

*Does 1-11 v. Board of Regents of University of Colorado*,
    100 F.4th 1251 (10th Cir. 2024) ...............................................................17

*Dowden v. City of Sacramento*,
    40 F. Supp. 2d 1146 (E.D. Cal. 1999) ......................................................24

*Emp. Div., Dep't of Human Res. of Or. v. Smith*,
    494 U.S. 872 (1990)...................................................................................10

*Fresh Int'l Corp. v. Agric. Lab. Relations Bd.*,
    805 F.2d 1353 (9th Cir. 1986) ..................................................................27

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021)......................................................................17, 18, 20

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
    130 F.3d 1381 (10th Cir. 1997) ................................................................15

*Gladstone v. Owens*,
    No. 25-1345, 2025 WL 3441796 (10th Cir. Dec. 1, 2025) .......................27

*Guttman v. New Mexico*,
    325 F. App'x 687 (10th Cir. 2009) ...........................................................23

*Hansen Found., Inc. v. Atlantic City*,
    No. 21-cv-20392, 2023 WL 2583458  (D.N.J. Mar. 21, 2023)........................24

*Heideman v. S. Salt Lake City*,
    348 F.3d 1182 (10th Cir. 2003) ................................................................15

*Kern v. Clark*,
    331 F.3d 9 (2d Cir. 2003) ..........................................................................27

*Lapides v. Board of Regents of the University System of Georgia,*
    535 U.S. 613 (2002)........................................................................23

*Mitchum v. Foster,*
    407 U.S. 225 (1972)..........................................................................5

*Morrow v. Winslow,*
    94 F.3d 1386 (10th Cir. 1996) ......................................................22

*Munaf v. Green,*
    553 U.S. 674 (2008) ..................................................................... 7-8

*Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,*
    477 U.S. 619 (1986)................................................................. 25-26

*O'Neill v. Coughlan,*
    *511* F.3d 638 (6th Cir. 2008) ........................................................22

*PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.,*
    978 F.3d 871 (3d Cir. 2020) ............................................................4

*Phelps v. Hamilton,*
    59 F.3d 1058 (10th Cir. 1995) ....................................... 25-26, 27, 28

*Phelps v. Hamilton,*
    122 F.3d 885 (10th Cir. 1997) ..................................................23, 24

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
    592 U.S. 14 (2020)....................................................................16, 17

*Sheils v. Bucks Cnty. Domestic Rels. Section,*
    921 F. Supp. 2d 396 (E.D. Pa. 2013)............................................24

*Sherbert v. Verner,*
    374 U.S. 398 (1963)......................................................................20

*Stone v. High Mountain Mining Co.,*
    89 F.4th 1246 (10th Cir. 2024) ....................................................28

*Tandon v. Newsom,*
    593 U.S. 61 (2021)..............................................................11, 15, 16

*Trant v. Oklahoma*,
    754 F.3d 1158 (10th Cir. 2014) ................................................................24

*Tri-State Generation & Transmission Ass'n, Inc. v.*
    *Shosone River Power, Inc.*, 874 F.2d 1346 (10th Cir. 1989) ..................... 4-5, 7

*Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*,
    577 F.3d 1255 (10th Cir. 2009) ...............................................................23

*We the Patriots USA, Inc. v. Hochul*,
    17 F.4th 266 (2d Cir. 2021) .....................................................................17

*Weitzel v. DOPL*,
    250 F.3d 871 (10th Cir. 2001) .................................................................27

Federal Statutes

28 U.S.C. § 1446 .........................................................................................6

28 U.S.C. § 2283 .........................................................................................5

State Statutes

Utah Code § 58-37-3.5 ......................................................................... 12-13

Utah Code § 58-37-6 .........................................................................18, 19, 20

Utah Code § 58-37-18 ...............................................................................11

Utah Code § 58-60-107 ..............................................................................19

State Regulations

Utah Admin. R156-17b-302 .......................................................................15

Utah Admin. R156-17b-617a.......................................................................15

Utah Admin. R156-17b-617e.......................................................................15

Utah Admin. R156-37-301 .........................................................................19

Utah Admin. R156-37-306 .........................................................................21

vi

Other

16 Fed. Prac. & Proc. Juris. § 3921.1 (3d ed. 2025)..........................................5, 8

Erwin Chemerinsky, *Federal Jurisdiction*, § 13.5 (9th ed. 2025).............23, 28, 29

# Glossary

CDE Br.  Brief of Amicus Curiae of Church of Direct Experience, Inc. in Support of Plaintiffs-Appellees

Correia Br. Brief of Deja Correia and Natalie Koski-Karell as Amicus Curiae in Support of Appellees Brief and of Affirmance of the District Court's Decision

DHHS  Utah's Department of Health and Human Services

DOPL  Utah's Division of Professional Licensing

Op.Br.  Appellants' Opening Brief

Resp.   Appellees' Response Brief

## Introduction

Plaintiffs claim a religious exemption from the Utah Controlled Substance Act (CSA) so expansive as to render unconstitutional the federal CSA and most of its state-law counterparts. And they invoke this exemption to defend a federal injunction interfering with a state criminal prosecution. Plaintiffs are wrong on all counts.

Jurisdictionally, this Court can address each of the issues on appeal. It has inherent—not merely pendent—jurisdiction under 28 U.S.C. § 1292(a)(1) to address all issues concerning the anti-suit injunction, which include the district court's federal constitutional analysis. The Court also has inherent, or at least pendent, jurisdiction to reverse the denial of the motion to dismiss.

On the merits, plaintiffs have not offered a viable defense of the district court's constitutional rulings. On the First Amendment, plaintiffs claim an exemption to the CSA based on an argument that the sacramental use of psilocybin at Singularism is comparable—in form and risk—to its use for research purposes in a highly regulated, institutionally accountable, and medically supervised environment. That argument defies common sense and precedent.

That constitutional error has cascading consequences. Plaintiffs do not dispute that, without an exemption to the CSA, their Fourth Amendment claim fails and that the anti-suit injunction must be vacated. That should be the end of it.

But even if plaintiffs were entitled to a religious exemption to the CSA, they have no argument to sustain the anti-suit injunction. The mandatory conditions for

1

*Younger* have been satisfied, and no exceptions apply. Plaintiffs' claims of bad faith, though cast in inflammatory rhetoric, fall short. And plaintiffs cite almost nothing to support their claim of irreparable harm.

This Court should reverse.

**Argument**

**1.     This Court Has Jurisdiction**

Plaintiffs offer two reasons (at 36–40) why this Court lacks appellate jurisdiction. Neither has merit.

**1.1     Plaintiffs' waiver argument is baseless**

Plaintiffs claim that defendants "forfeited and waived [their] anti-suit injunction arguments by failing to oppose dismissal of the criminal charges [they] brought against Mr. Jensen" in state court. (Resp.36.) That argument is based on a blinkered view of the state proceedings.

As the State explained at the hearing on the motion to dismiss, it declined to file a *written* opposition to the motion in obedience to the federal injunction, which ordered "Utah County and Utah County Attorney Jeffrey Gray" to "cease further proceedings in" the case.[1] [App-5:193.] No appeal could be taken for similar reasons.

Even so, at the same motion hearing, the State expressly asked the state court to stay the criminal action rather than dismiss.[2] Ultimately, the court chose not to stay, but it dismissed without prejudice to the State's "absolute right to refile," depending on the outcome of this appeal.[3] Unsurprisingly, courts have

---

[1] *See* Reporter's Tr. of Proc. at 3–4, *State of Utah v. Jensen*, No. 241404407 (Utah Fourth Dist. Sept. 22, 2025) (Ex. 1 to Appellants' Mot. for Judicial Notice).
[2] *Id.* at 4.
[3] *Id.* at 6.

3

rejected waiver in analogous circumstances. *E.g.*, *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 881 (3d Cir. 2020).

To construe defendants' actions as waiver would penalize them for complying with the injunction. A party does not waive an appeal of an injunction by complying with it.

### 1.2 This Court has inherent jurisdiction to review each issue on appeal

In a single order, the district court granted plaintiffs' anti-suit injunction and denied defendants' motion to dismiss. Although plaintiffs acknowledge (at 36) that the former ruling is immediately appealable, they contend (at 39) the latter ruling is not, because the two rulings are not inextricably intertwined. Based on that view, they assume that this Court lacks jurisdiction to review the district court's federal constitutional analysis. Plaintiffs are wrong.

**1.** Plaintiffs' first error arises from their mistaken belief that this Court can only review the district court's federal constitutional analysis in connection with the motion to dismiss. In fact, this Court must review the court's constitutional analysis to evaluate the propriety of the anti-suit injunction, and such review falls squarely within this Court's inherent jurisdiction.

For appeals under 28 U.S.C. § 1292(a)(1), this Court has jurisdiction over "all reasons underlying" the court's grant of the injunction. *Tri-State Generation & Transmission Ass'n, Inc. v. Shosone River Power, Inc.*, 874 F.2d 1346, 1351

(10th Cir. 1989); 16 Fed. Prac. & Proc. Juris. § 3921.1 (3d ed. 2025) (hereafter, Wright & Miller) (similar).

Here, the district court's conclusion that plaintiffs were likely to succeed on their federal constitutional claims was not just a reason for the injunction—it was a necessary predicate. As the opening brief explained (at 38)—and the district court repeatedly recognized—it could not enjoin the criminal prosecution against Jensen unless the proceeding threatened his federal rights. [App-5:152–54 & n.12, 191.] That's because the Anti-Injunction Act (AIA) bars injunctions against state court proceedings unless one of three exceptions applies. 28 U.S.C. § 2283. And the court here relied on the "expressly authorized" exception, which applies only when a federal forum is necessary to protect a "specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 237 (1972).

Under the AIA, the district court could not enter an injunction without finding a probable federal constitutional violation. This Court's review of that constitutional analysis is thus "necessary to determine the propriety of the interlocutory order itself." Wright & Miller § 3921.1. If no federal right is in jeopardy, the injunction must be vacated.

**2.** Likely recognizing this jurisdictional footing, plaintiffs suggest a workaround. They say (at 44) the district court could have invoked the "expressly

5

authorized" exception based on defendants' use of the federal removal statute. Under that logic, the district court's constitutional rulings need not be reviewed on appeal because the court could have issued the injunction on an alternative basis.

But the district court correctly rejected reliance on the removal statute. [App-5:189–91.] The statute's text restricts the injunctions authorized to the specific state case removed to federal court: "the State court shall proceed no further unless and until *the case* is remanded." 28 U.S.C. § 1446(d) (emphasis added); *see Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 250 (4th Cir. 2013) (Section 1446(d) "speaks only in terms of *the removed* case"). The removal statute does not authorize federal courts to enjoin non-removed state criminal cases.

Even the authorities that have recognized that the removal statute can sometimes support an AIA exception do not support its application here. As the district court recognized, the cases plaintiffs cite (at 44) applied the exception to enjoin "copycat" civil lawsuits, filed *by plaintiffs*, after a defendant removed an action to federal court, to protect the *defendant's federal removal right*. [App-5:190–91.] Enjoining the state criminal proceeding against Jensen would do nothing to protect defendants' rights under the removal statute, so the exception cannot work here.

**3.** Independent of the AIA, this Court has jurisdiction to review the district court's constitutional analysis based on *Younger*.

As the district court recognized, *Younger* principles would bar the injunction—even if the court had authority under the AIA—unless an exception to *Younger* abstention applied. [App-5:185.]

In finding such an exception, the district court relied on its constitutional analysis: it ruled that allowing defendants to prosecute Jensen would likely cause irreparable injury to plaintiffs' "federally protected rights." [App-5:186.]

Because the court's constitutional ruling was necessary to its application of a *Younger* exception, this Court must review that ruling to determine the injunction's propriety. If the exception does not apply because the prosecution would not infringe a federal right, then *Younger* barred the injunction.

Again, the constitutional analysis fits within this Court's inherent jurisdiction to review the "reasons underlying" the injunction. *See Tri-State Generation*, 874 F.2d at 1351.

**4.** Admittedly, the part of the order denying defendants' motion to dismiss is on slightly different footing. The rule 12(b)(6) standard governs motions to dismiss, whereas the district court appeared to apply a preliminary-injunction standard to the injunction motion, observing that "Plaintiffs are likely to succeed on the merits of their Free Exercise Claim." [App-5:192.]

Even so, this Court has inherent jurisdiction to reverse the denial of the motion to dismiss. In *Munaf v. Green*, the Supreme Court recognized appellate courts' jurisdiction to address motions to dismiss that relate to interlocutory

7

injunctions. *See* 553 U.S. 674, 691 (2008). The Court did not describe such jurisdiction as "pendent." *Id.*

Plaintiffs misread *Munaf* when they say it "present[ed] a one-of-a-kind situation involving foreign affairs." (Resp.38n.6.) The Court's jurisdictional analysis was based on general principles: "'[t]he question whether an action should be dismissed for failure to state a claim is one of the most common issues that may be reviewed on appeal from an interlocutory injunction order.'" *Munaf*, 553 U.S. at 691 (quoting Wright & Miller § 3921.1). That's because "[c]onsideration of the sufficiency of the claim often is an important ingredient of the injunction determination." Wright & Miller § 3921.1.

Plaintiffs say that subsequent cases have limited *Munaf* to preliminary injunctions. (Resp.38n.6.) But the cases they cite do not purport to limit *Munaf*, which states the rule for *any* "interlocutory injunction." 553 U.S. at 691. Regardless, the injunction here was preliminary in that it ordered defendants to cease proceedings in the state criminal action "pending final judgment in this court." [App-5:193.]

**5.** Because this Court has inherent jurisdiction to review the district court's power to issue the anti-suit injunction, its federal constitutional analysis, and its denial of defendants' motion to dismiss, plaintiffs' discussion (at 38–41) of pendent jurisdiction misses the point.

8

Regardless, the test for pendent appellate jurisdiction is satisfied. As explained above, this Court must review the district court's federal constitutional analysis to determine the propriety of the injunction under both the AIA and *Younger*. If that analysis confirms that no federal rights are in play, then "a ruling on the merits of the interlocutory appeal" would resolve "all of the remaining issues presented by the pendent appeal." *Brock v. Flowers Foods, Inc.*, 121 F.4th 753, 771 (10th Cir. 2024).

Courts have exercised pendent appellate jurisdiction in similar contexts. For example, in *AmSouth Bank v. Dale*, a federal district court enjoined a state-court proceeding and denied a motion to dismiss. 386 F.3d 763, 770–72 (6th Cir. 2004). The Sixth Circuit ruled that it "defie[d] logic" to suggest it lacked inherent jurisdiction to consider the motion-to-dismiss arguments when reviewing the injunction—because the arguments went "to the power of the district court to exercise jurisdiction over these actions or its discretionary responsibility to decline to do so, they all go to the 'merits' of the injunction issued by the district court." *Id.* at 774. The court exercised pendent appellate jurisdiction only to reverse the order denying the motion to dismiss. *Id.* at 775; *see Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 837 n.1 (9th Cir. 1986) (similar).[4]

---

[4] Plaintiffs do not join amicus's request for the district court retain jurisdiction over the state-law claims if this Court dismisses the federal claims. (*See* CDE Br.21–28.) Amicus's suggestion (at 25–26) that defendants are forum-shopping to avoid resolution of the state claims is wrong. Remanding novel state-law claims to state court does not preclude resolution of those claims; it fosters decisive resolution by a precedential court.

**2.      Plaintiffs' First and Fourth Amendment Rights Were Not Violated**

As the preceding discussion illustrates, the lack of merit underlying plaintiffs' federal constitutional claims is likely dipositive of the appeal. If this Court concludes that plaintiffs are unlikely to succeed on their First and Fourth Amendment claims, then it must vacate the injunction because no other federal right can justify the injunction's interference with a state criminal proceeding. Likewise, if the federal claims lack merit, this Court can and should reverse the denial of the motion to dismiss.

Because of the centrality of the constitutional questions to this appeal, this reply addresses them first.

**2.1      The Utah CSA is generally applicable**

Plaintiffs do not dispute that their Free Exercise claim fails if rational basis review applies. (Op.Br.34.) Applying that standard, courts have repeatedly rejected challenges to the federal and many state CSAs based on exemptions like the one at issue here. (Op.Br.29–31.) Indeed, the seminal case recognized the general applicability of a "criminal prohibition" of a substance even though it might be "prescribed by a medical practitioner." *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 874 (1990).[5]

---

[5] Plaintiffs erroneously suggest that defendants waived arguments that the Utah CSA would survive strict scrutiny. (Resp.53.) The district court never ruled that the statute would fail under strict scrutiny, so defendants did not have to address that issue. [App-5:169.]

Because plaintiffs do not challenge the CSA's neutrality, they must show that it is not generally applicable to avoid rational basis review. (Op.Br.27.) Their arguments are unpersuasive.

### 2.1.1    The use of psilocybin at Singularism is not comparable to its use under the medical exemption

General applicability turns on whether a statute treats "comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* "Comparability is concerned with the risks various activities pose" relative to those interests. *Id.*

It is undisputed that Utah's interests in enacting the CSA mirror Congress's interests in enacting the federal CSA. *See* Utah Code § 58-37-18(3) (requiring the CSA to be construed in uniformity with similar acts). As explained in the opening brief (at 6–7,29), these include preventing diversion of psilocybin to illicit markets and preventing the deleterious individual and public health effects of psilocybin's abuse.

Plaintiffs offer three arguments for why the use of psilocybin at Singularism poses no greater risk to these interests than its use under the medical exemption. Each lacks merit.

**1.** Plaintiffs first question (at 61–62) the public-health and diversion concerns motivating the CSA. Their skepticism is unfounded.

Plaintiffs principally cite their own briefs below, where they nitpicked the sources defendants cited to substantiate psilocybin's risks. (Resp.61 (citing App-2:170–72, App-3:242–43).) But the simple fact is that psilocybin remains a schedule I controlled substance under both Utah and federal law because both Congress and the Utah Legislature perceive meaningful risks from its abuse and diversion. Indeed, the Utah Psychotherapy Task Force Report, of which plaintiffs urge judicial notice, confirms: "Currently psilocybin is Schedule I, indicating a potential for abuse." Utah Mental Illness Psychotherapy Drug Task Force, at 27 (Oct. 2022). Its risks include suicidal ideation, acute anxiety, and cognitive impairment. *Id.* at 26.

Psilocybin may well have potential therapeutic benefits. But as plaintiffs conceded below, current evidence shows only preliminary support for discrete therapeutic applications. [App-2:172.] The CSA reflects the preliminary state of the evidence by granting an exemption for limited research and medical purposes in a regulated environment.

**2.** Plaintiffs next argue that the risk of "administration of psilocybin to secular individuals under the [medical exemption] is comparable to Singularism's administration of psilocybin as a religious sacrament." (Resp.60.) Not so.

The administration of an FDA-approved form of psilocybin under the supervision of licensed healthcare providers who report information necessary for the Legislature to evaluate the drug's medicinal value, Utah Code

12

§§ 58-37-3.5(1)(a), (3)(a), bears little resemblance to its use for non-research purposes by unlicensed and unregulated individuals who assume its safety. Plaintiffs assert that they "take[] many of the precautions required" by the statutory exemption, but they specify only one: they don't administer the drug to those under 18. (Resp.64–65.)

Plaintiffs also do not allege they are subject to the scores of background regulations that apply under the exemption, including inspection by DHHS and a multitude of regulations governing drug sourcing, dosage management, and hygiene, among other things. (Op.Br.32–33.)

Plaintiffs have recognized these differences before. Singularism's informed consent provides: "The advice from Singularism's staff, despite being informed, is not a substitute for licensed and qualified professional medical advice, and we acknowledge their clinical advice supersedes our spiritual advice in medical and physical matters." [App-4:138.] This disclaimer alone defeats plaintiffs' charge that the CSA makes a "value judgment in favor of secular motivations, but not religious motivations." (Resp.55 (quotation simplified)).

The risks also meaningfully differ with respect to accountability. Singularism is subject to no oversight. And voyagers lack recourse if something goes wrong: Singularism requires all voyagers to "waive and release Singularism" and "any associated parties from any liability or claims that may arise from their participation in the psychedelic ceremonies." [App-4:142.] By contrast, licensed

13

medical providers participating in the medical exemption are subject to medical malpractice suits and professional discipline by DOPL. (Op.Br.32.)

All these differential risks are evident on the face of the complaint, the documents incorporated therein, and the law. Under a 12(b)(6) standard, the activities and risks are not comparable.

But that's not at all. The evidence at the TRO hearing showed that Singularism allows unlicensed facilitators to determine dosage without any of the constraints that would apply in a clinical setting. (Op.Br.13.) Its supply comes from an uncertain lab in Oregon, delivered by someone identified only as "Inge." (Op.Br.13–14.) And when the search warranted was executed, Singularism's supply was stored in a hodgepodge of bags, paper cups, and glass jars. [App-4:212,219,256–67.] Singularism has not alleged that any of this complies with the clinical standards applicable under the medical exemption.

Plaintiffs say this Court can ignore these red flags because "nothing in Singularism's complaint . . . indicates Singularism poses materially larger risks to the government's asserted interests in drug distribution or public health." (Resp.66–67.) That's incorrect.

First, the district court appeared to consider materials beyond the pleadings for the motion to dismiss. In finding the risks comparable, the court emphasized that "the medical exemption imposes no sourcing, testing, or chain-of-custody

requirements for the psilocybin administered by healthcare systems."[6] [App-5:167.] The court would have no reason to emphasize that point, absent the red flags uncovered in the TRO hearing regarding Singularism's failure to ensure the safety of its psilocybin. On appeal, this Court may rely on any record matter on which the district court relied. *E.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Second, for purposes of reviewing the anti-suit injunction, this Court is not cabined by rule 12(b)(6). The district court appeared to apply the likelihood-of-success standard applicable to preliminary injunctions when assessing the constitutional claims for purposes of the injunction. [App-5:192.] For such injunctions, a court can consider the whole record. *E.g.*, *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

**3.** Plaintiffs' final argument appears to be that recent case law has lowered the bar for comparability. (Resp.60–62 & n.11; Correia Br.12–13.) If they are right, then the federal CSA and most state counterparts are now constitutionally suspect. (Op.Br.27–28.) But their view is wrong.

*Tandon* is a good example. There, the Supreme Court found that California's restrictions on at-home religious gatherings during the Covid-19 pandemic were not generally applicable. 593 U.S. at 63. The problem was that California restricted

---

[6] The court was wrong; many background regulations for sourcing apply. *E.g.*, Utah Admin. R156-17b-302(5)(d) (licensing requirement for "human clinical investigational drug research facility pharmacies"); *id*. R156-17b-617a to -617e (operating protocols for such pharmacies).

such gatherings, even as it permitted secular gatherings in hair salons, retail stores, theaters, and more. *Id.* The latter activities comparably undermined the government's stated interest in preventing the spread of Covid-19 because they acted as similar vectors to transmit Covid-19. *Id.* at 64. Given the comparable risks, the Court found the regulation was not generally applicable. *Id.*

Plaintiffs mischaracterize *Tandon*. The case does not hold, as they claim, that defendants "must show that even if Singularism followed all the precautions the health care systems take in their psilocybin treatment programs, Singularism still poses a materially greater risk." (Resp.64.) It holds that if the government permits secular activities to proceed with precautions, it must "show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied." *Tandon*, 593 U.S. at 62. The problem for plaintiffs is that Singularism indisputably has not applied all the same precautions that apply under the medical exemption. What's more, the portion of *Tandon* plaintiffs cite describes the test for strict scrutiny—not the test for determining the tier of scrutiny to apply. The comparability test does not require courts to presume similar precautions.

*Roman Catholic Diocese of Brooklyn v. Cuomo* also involved pandemic-related regulations on indoor gatherings. 592 U.S. 14, 16 (2020). But that case was mostly about neutrality, not general applicability. *Id.* at 17. The Court applied strict scrutiny because official statements made clear the restrictions

16

targeted specific religious groups. *See id.* The challenged regulations also "single[d] out houses of worship for especially harsh treatment." *Id.* at 17. There is nothing comparable here.

Applying *Tandon* and *Roman Catholic Diocese*, several circuits have upheld medical exemptions to Covid-19 vaccination mandates, when no religious exemptions were provided. *E.g.*, *Brox v. Woods Hole*, 164 F.4th 37, 50–51 (1st Cir. 2026); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 287 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2569 (2022); *Does 1-6 v. Mills*, 16 F.4th 20, 31 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022). These cases confirm that nothing is inherently suspect about medical exemptions. Rather, problems arise when states grant exemptions for comparable secular and religious activities but treat the religious activities more harshly.

That's what happened in *Does 1-11 v. Board of Regents of University of Colorado*, 100 F.4th 1251 (10th Cir. 2024). There, a Covid-19 vaccination mandate granted both secular and religious exemptions but made it easier to obtain secular exemptions. *Id.* at 1258. As this Court explained, the mandate was not generally applicable because "on its face it makes a value judgment in favor of secular motivations because it has a lower bar for denying religious exemptions." *Id.* at 1277. The exemption here is nothing like that.

*Fulton v. City of Philadelphia* does not help plaintiffs either. 593 U.S. 522 (2021). There, the Court relied on *Church of Lukumi Babalu Aye, Inc. v. Hialeah* to

17

illustrate what counts as comparable activity. *Id.* at 534 (citing 508 U.S. 520 (1993)). In *Lukumi*, a city gerrymandered a prohibition on animal sacrifice to capture the religious practices of the Santeria faith but not secular practices like butchering or hunting. 508 U.S. at 527–28. Although the ban was ostensibly for public health and animal safety, the secular activity posed similar hazards. *Id.* at 544–45. As *Fulton* explained, "this and other forms of underinclusiveness meant that the ordinances were not generally applicable." 593 U.S. at 534.

No underinclusiveness problem arises here. The CSA authorizes a highly regulated exemption to research psilocybin's potential therapeutic benefits. It did not create exemptions for unregulated uses of psilocybin, secular or religious. Forcing the state to extend an exemption to Singularism would undermine its interests in a materially different way. *See Fulton*, 593 U.S. at 534.

### 2.1.2    The CSA does not grant individualized exemptions

Plaintiffs separately argue that the CSA is not generally applicable because it purportedly "contains a formal mechanism for granting individual exemptions." (Resp.67; Correia Br.14–15.) They point to Utah Code § 58-37-6(2)(d), which allows DOPL to waive the CSA's medical licensing requirement for dispensing controlled substances in limited circumstances. Plaintiffs asserted this same argument below. [App-3:246–47 & n.6.] The district court correctly declined to adopt it.

18

For context: Utah generally requires individuals prescribing controlled substances to be licensed by DOPL for that purpose. Utah Code § 58-37-6(2)(a)(i). DOPL only grants such licenses to practitioners who already have a professional license from DOPL, such as medical doctors and pharmacists. Utah Admin. R156-37-301(1)(a).[7]

Section 58-37-6(2)(d) authorizes DOPL to "enact rules waiving the license requirement for certain manufacturers, producers, distributors, prescribers, dispensers, administrators, research practitioners, or laboratories performing analysis if waiving the license requirement is consistent with public health and safety."

Section 58-37-6(2)(d) is not an individualized exemption. "A system of individualized exemptions is one that gives rise to the application of a subjective test." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021) (quotation simplified), *rev'd on other grounds*, 600 U.S. 570 (2023). "Conversely, an exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons." *Id.* (quotation simplified).

---

[7] As plaintiffs note (at 67–68), a different exemption allows "recognized member[s] of the clergy" to "engage in acts included within the definition of practice as a mental health therapist." Utah Code § 58-60-107(2). This exception allows clergy to engage in religious counseling that resembles mental health counseling. It does not authorize clergy to prescribe medication, let alone schedule I drugs.

19

Section 58-37-6(2)(d) requires DOPL to *enact rules* governing when it can waive licensing requirements for "objectively defined categories of persons." *Id.* It does not provide a procedure for case-by-case exemptions.

Nor does it authorize DOPL to discriminate based on religious motivation. In drafting the rules, DOPL must consider whether "waiving the license requirement is consistent with public health and safety." Utah Code § 58-37-6(d). That limited assessment does not invite DOPL to "consider the particular reasons for a person's conduct." *Fulton*, 593 U.S. at 533 (quotation simplified). Rather, it is a categorical determination: would an exemption further the CSA's public health and anti-diversion goals, whatever the applicant's motivations?

 The exception also is "qualitatively different from the broad, discretionary analyses presented in other individualized exemption cases." *303 Creative LLC*, 6 F.4th at 1187. In *Fulton*, the Court found problematic a system that allowed exemptions to be granted in a city official's "sole discretion." 593 U.S. at 535; *see also Sherbert v. Verner*, 374 U.S. 398, 401 (1963) ("good cause").

The final rule DOPL enacted is categorical. It authorizes three narrow exceptions for: (1) "law enforcement agencies" where "their official duties require them to possess controlled substances"; (2) "individuals and entities engaged in research using pharmaceuticals" within a regulated "research facility"; and (3) "individuals employed by a facility engaged" in narcotic detection or animal

20

control that meets specific operational and licensing requirements. Utah Admin. R156-37-306.

Each of these exemptions is consistent with the CSA's purpose: to permit highly regulated use of psilocybin for research purposes, while preventing diversion.

### 2.2  Plaintiffs concede their Fourth Amendment claim depends on their First Amendment Claim

As the opening brief explained, plaintiffs' Fourth Amendment claim must fail with its Free Exercise claim. (Op.Br.34–35.) Plaintiffs do not dispute as much but acknowledge that their Fourth Amendment claim turns on whether "the government maintained and was executing a policy or custom of refusing to recognize valid religious exemptions from the Utah CSA" when it executed a search warrant. (Resp.76.) Because Singularism is not entitled to a religious exemption, that claim must also fail.[8]

### 3.  This Court Must Vacate the Anti-Suit Injunction

Plaintiffs concede (at 49) that the conditions that normally require *Younger* abstention are satisfied. (Op.Br.40–42.) Still, they ask this Court to disregard *Younger*'s mandate. Their arguments lack merit.

---

[8] The CDE amicus brief (at 13–21) likewise presupposes that Singularism was entitled to a religious exemption.

21

### 3.1    Defendants did not waive *Younger* arguments

Plaintiffs argue (at 46–47) that defendants waived *Younger*-based arguments by removing the action to federal court and litigating a TRO and preliminary injunction before pressing abstention. Not so.

As the opening brief explained (at 57–58), waiver ordinarily requires a party to expressly disavow *Younger*. But plaintiffs do not argue express waiver—they rely on litigation conduct.

True, some caselaw suggests that extensive litigation activity can constitute waiver. But the extreme facts of those cases confirm the absence of waiver here. For example, in *ACORN v. Municipality of Golden, Colorado*, this Court found waiver where the City failed to raise *Younger* abstention in the district court and on appeal. 744 F.2d 739, 742 n.2 (10th Cir. 1984). Here, defendants immediately raised *Younger* in response to plaintiffs' anti-suit injunction. [App-3:130–50.] Regardless, it is not clear *ACORN* would come out the same today. This Court has clarified it can raise *Younger* even where a party does not. *E.g.*, *Morrow v. Winslow*, 94 F.3d 1386, 1390–91 (10th Cir. 1996).

Other circuits have ruled that it takes far more than a failure to raise *Younger* in preliminary proceedings—such as TRO and preliminary injunction proceedings—to waive it. For example, in *O'Neill v. Coughlan*, the Sixth Circuit held that a defendant's "failure to assert *Younger* abstention before arguing for dismissal of the claims on the merits did not constitute waiver." 511 F.3d 638, 643 (6th Cir. 2008).

Plaintiffs also err when they insist (at 45–46) that removal waived *Younger*-based arguments. *Younger* abstention protects *state courts* from federal interference. *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (*Phelps II*). Allowing *parties* to waive the judiciary's interest makes little sense. *See* Erwin Chemerinsky, *Federal Jurisdiction*, § 13.5, at 838 (9th ed. 2025).

The rationale for applying waiver is especially weak here, because defendants removed a different case from the one the district court enjoined. (Op.Br.58–60.) The fairness and consistency concerns that have led other courts to find waiver "are simply not present when the current suit is factually and legally distinct from the previous action." *See Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1259 (10th Cir. 2009).

Few cases plaintiffs cite hold that removal waives *Younger* arguments. *Guttman v. New Mexico* was a case about litigation activity, not removal. 325 F. App'x 687 (10th Cir. 2009). There, this Court found waiver because a party failed to raise *Younger* over the course of six years of litigation, including a prior appeal. *Id.* at 693. *Cradle of Liberty Council, Inc. v. City of Philadelphia* is distinguishable for similar reasons. *See* No. 08-cv-2429, 2009 WL 3921140, at *4 (E.D. Pa. Nov. 18, 2009).

*Lapides v. Board of Regents of the University System of Georgia* was not a *Younger* case. 535 U.S. 613 (2002). It held that removal waived a state's right to assert Eleventh Amendment sovereign immunity from suit. *Id.* at 624. But

plaintiffs cite "no authority to support [their] attempt to import

Eleventh Amendment immunity principles into the *Younger* abstention

jurisprudence." *Sheils v. Bucks Cnty. Domestic Rels. Section*, 921 F. Supp. 2d 396,

408 (E.D. Pa. 2013). Although both doctrines implicate federalism, the concerns

are different. The Eleventh Amendment protects the rights of states as sovereigns.

*Younger* protects the "independent operation of state legal systems." *Phelps II*, 122

F.3d at 889. The reasons for applying waiver for the Eleventh Amendment do not

translate.[9]

Finally, plaintiffs cite an unpublished district court decision where

defendants did "not expressly seek abstention under any theory." *Hansen Found.,

Inc. v. Atlantic City*, No. 21-cv-20392, 2023 WL 2583458, at *6 (D.N.J. Mar. 21,

2023). The court found waiver based on removal, but it provided minimal

reasoning. *Id.*

Other courts have rejected waiver-through-removal arguments.[10] These

decisions are more faithful to *Ohio Civil Rights Commission v. Dayton Christian

Schools, Inc.*, where the Supreme Court reversed a district court's refusal to abstain

under *Younger*, even though the State "had stipulated in the District Court that that

---

[9] Removal waives only a state's immunity from suit in federal court, not a state's ability to raise other sovereignty-based defenses, such as immunity from liability. *Trant v. Oklahoma*, 754 F.3d 1158, 1172–74 (10th Cir. 2014). By similar logic, removal waived, at most, defendants' ability to use *Younger* to avoid federal jurisdiction, not *Younger*-based defenses to the injunction. (Op.Br.59.)

[10] *E.g.*, *Dowden v. City of Sacramento*, 40 F. Supp. 2d 1146, 1152 n.5 (E.D. Cal. 1999); *Barnes v. Allen*, No. 18-cv-0394, 2019 WL 653814, at *2 n.1 (N.D. Okla. Feb. 15, 2019).

court had jurisdiction of the action." 477 U.S. 619, 626 (1986). As *Dayton*
explained, *Younger* abstention "does not arise from lack of jurisdiction in the
District Court, but from strong policies counseling against the exercise of such
jurisdiction where particular kinds of state proceedings have already been
commenced." *Id.* By extension, defendants' recognition—via removal—that a
federal forum was jurisdictionally proper for the litigation of federal constitutional
rights did not compromise their ability to challenge a specific exercise of federal
power over a state criminal prosecution of one of the defendants in state court.

At a minimum, *Dayton* shows that removal did not waive defendants' ability
to oppose the anti-suit injunction on *Younger* grounds, even if it waived their
ability to seek remand on *Younger* grounds. (Op.Br.58–59.)

Plaintiffs' only response to that argument misses the mark. They insist that
defendants "voluntarily submitted to the federal forum" through their litigation
conduct. (Resp.47.) But none of defendants' *Younger* arguments question the
propriety of a federal forum—only the propriety of a disfavored injunction.

### 3.2 Abstention would further *Younger*'s twin goals

Plaintiffs also argue that "the purpose of *Younger* abstention is not served in
this case." (Resp.48.) That argument is wrong.

First, it ignores the fact that *Younger* serves "twin rationales of respecting
prosecutorial discretion and federalism." *Phelps v. Hamilton*, 59 F.3d 1058, 1064

(10th Cir. 1995) (*Phelps I*). Plaintiffs do not dispute that allowing defendants to prosecute Jensen furthers the former goal.

Second, abstention furthers federalism here. Preventing federal injunctions of state criminal proceedings is a core federalism concern. *Id.* Allowing the state criminal proceeding to go forward thus furthers *Younger*'s purposes.

### 3.3 Plaintiffs offer no meaningful defense of the district court's *Younger* analysis

The district court's *Younger* analysis was anomalous. Few courts have found even one exception to *Younger*'s mandate; yet the district court found two in one case. (Op.Br.47–57.) Plaintiffs say very little to defend the court's decision. (Resp.49–52.) What they do say lacks merit.

### 3.3.1 Plaintiffs misstate the standard of review

To begin, plaintiffs misstate the standard of review. They assert "the district court's conclusion that *Younger*'s bad faith and irreparable harm exceptions applied" is subject to "an abuse of discretion or clear error" standard. (Resp.52.) Their only support (at 42) is Fifth Circuit case. But the law in this Circuit is clear: a district court's "decision on whether to abstain under the *Younger* doctrine is reviewed de novo." *Courthouse News Serv. v. N.M. Admin. Off. of the Courts*, 53 F.4th 1245, 1254 (10th Cir. 2022).

At times, this Court has suggested that some non-*Younger* issues implicating the propriety of anti-suit injunctions are reviewed for abuse of discretion. *E.g.*, *Bailey v. State Farm Fire & Cas. Co.*, 414 F.3d 1187, 1189 (10th Cir. 2005). But

when the propriety of an injunction turns on *Younger*, this Court applies a de novo standard because abstention "is mandatory" when the requisite criteria are satisfied. *Phelps I*, 59 F.3d at 1063.

Several circuits have explained how to reconcile the two standards: because application of *Younger* is a legal determination, the de novo standard "supervenes the abuse of discretion inquiry" generally applicable to injunctions. *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Brooks v. N.H. Sup. Ct.*, 80 F.3d 633, 637 (1st Cir. 1996)).

Plaintiffs separately suggest that deference is owed because a district court's factual findings are reviewed for clear error. (Resp.42.) But in the *Younger* context, bad faith and irreparable harm are legal, not factual, determinations.

*Younger* analysis is "based entirely on questions of law." *Gladstone v. Owens*, No. 25-1345, 2025 WL 3441796, at *4 (10th Cir. Dec. 1, 2025); *see Phelps I*, 59 F.3d at 1067 n.17 ("whether the prosecutions were motivated 'at least in part' by bad faith or harassment" is "a legal standard" (quotation simplified)).[11] Thus, this Court has repeatedly reviewed *Younger* bad-faith determinations without mentioning the district court's underlying findings—confirming that the applicability of the exceptions is purely legal. *E.g.*, *Weitzel v. DOPL*, 250 F.3d 871, 877–78 (10th Cir. 2001).

---

[11] *See Kern v. Clark*, 331 F.3d 9, 11 (2d Cir. 2003) (factual findings underlying *Younger* are reviewed for clear error, but exception's applicability is reviewed de novo); *Fresh Int'l Corp. v. Agric. Lab. Relations Bd.*, 805 F.2d 1353, 1356 (9th Cir. 1986) (similar).

In any event, plaintiffs do not identify what factual findings they believe are owed deference here. The district court made no specific findings of fact under rule 52(a)(2). Nor did it have a hearing on bad faith. *Phelps I*, 59 F.3d at 1063 n.8. As this Court has explained, a court relinquishes its duty to make the requisite findings to support bad faith by not taking evidence or requiring the movant "to prove that the prosecutions were instituted in bad faith or to harass." *Id.*

At most, this Court would defer to the district court's finding that certain events took place—e.g., that defendants tested the sincerity of Singularism's religious beliefs. But this Court is not bound by the incorrect legal inferences the court drew from those facts. *Stone v. High Mountain Mining Co.*, 89 F.4th 1246, 1251 (10th Cir. 2024). For example, the court erroneously inferred bad faith from questions about religious sincerity, even though the relevant legal tests make sincerity relevant to the pending dispute. (Op.Br.52–53.)

### 3.3.2    *Younger*'s exceptions do not apply

To establish bad faith, plaintiffs recite (at 50–51) a laundry list of events— without engaging with the opening brief's explanation of those events or governing case law. (Op.Br.50–57.)

But even if this Court accepted all the nefarious inferences plaintiffs draw from those events, the facts would still not add up to bad faith. "[T]here is not a single instance in which the Supreme Court has applied this exception." Chemerinsky, *Federal Jurisdiction* § 13.5, at 834. The broader "universe of

bad-faith-harassment claims" is likewise "virtually empty." *Id.* at 835. The exception "appears limited" to cases involving "repeated prosecutions initiated by state officials solely for the purpose of harassment without the opportunity to raise the claims in state court because of the unavailability or bias of the state judiciary." *Id.* That is not this case.

With respect to irreparable harm, plaintiffs devote a single sentence to the district court's defense: the "court made similar factual findings demonstrating irreparable harm." (Resp.51–52.) But irreparable harm is a legal determination, premised in the first instance on whether the court correctly evaluated plaintiffs' federal constitutional claims. If it did not, the exception is legally improper. But even if plaintiffs demonstrated a likelihood of success on those claims, irreparable harm still would be absent because Jensen can assert all the same claims in state court. (Op.Br.43–47.)

Given the overwhelming weight of precedent, all of this is sufficient to give rise to "a definite and firm conviction that a mistake has been made," even if a clear error standard applied. *Acosta v. Foreclosure Connection*, 903 F.3d 1132, 1134 (10th Cir. 2018) (quotation simplified).

## Conclusion

This Court should vacate the anti-suit injunction, reverse the denial of defendants' motion to dismiss, and remand with instructions to dismiss the remaining state-law claims.

DATED this 18th day of March, 2026.

ZIMMERMAN BOOHER

s/ Caroline Anais Olsen
Troy L. Booher
Caroline Anais Olsen
ZIMMERMAN BOOHER
341 South Main Street, Fourth Floor
Salt Lake City, UT 84111
tbooher@zbappeals.com
colsen@zbappeals.com
(801) 924-0200

*Attorneys for Appellants*

JAMES DODGE RUSSELL & STEPHENS, P.C.
Mitchell A. Stephens
Justin L. James
Dillon P. Olson

*Attorneys for Appellants Utah County and Jeffrey Gray*

PROVO CITY ATTORNEY'S OFFICE
J. Brian Jones
Gary D. Millward
Nicholas Muhlestein
Richard A. Roberts

*Attorneys for Appellant Provo City*

**Certificate of Compliance**

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 6,499 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in a 14-point Times New Roman font.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

Dated this 18th day of March, 2026.

s/ Caroline Anais Olsen
Troy L. Booher
Caroline Anais Olsen
ZIMMERMAN BOOHER
341 South Main Street, Fourth Floor
Salt Lake City, UT 84111
tbooher@zbappeals.com
colsen@zbappeals.com
(801) 924-0200

*Attorneys for Appellants*

31

**Certificate of Digital Submission**

I hereby certify that with respect to the foregoing Reply Brief of Appellants:

(1)    any required privacy redactions have been made;

(2)    the paper copies of the brief to be filed with the court are exact copies of the scanned brief; and

(3)    the digital submission has been scanned for viruses with Microsoft Defender Antivirus Security intelligence version 1.445.597.0 (updated March 18, 2026) and according to the program is free of viruses.

Dated this 18th day of March, 2026.

s/ Caroline Anais Olsen
Troy L. Booher
Caroline Anais Olsen
ZIMMERMAN BOOHER
*Attorneys for Appellants*

## Certificate of Service

I hereby certify that on the 18th day of March, 2026, I caused the foregoing

*Reply Brief of Appellants* to be filed via the CM/ECF System, which electronically

served the following:

J. Brian Jones: jbjones@provo.utah.gov
Gary Millward: gmillward@provo.org, millwardlegal@gmail.com
Mitchell A. Stephens: mstephens@jdrslaw.com, administrator@jdrslaw.com
Justin L James: jjames@jdrslaw.com
Dillon P. Olson: dolson@jdrslaw.com, administrator@jdrslaw.com
Tanner James Bean: tbean@fabianvancott.com, knielson@fabianvancott.com
Jacqueline Rosen: jrosen@fabianvancott.com, mcrawford@fabianvancott.com
Richard A. Roberts: rroberts@provo.gov, czarbock@provo.gov
Nicholas Muhlestein: nmuhlestein@provo.gov
Ronald Wallace McNutt: ronaldwmcnutt@gmail.com
David Carn: david@davidcarn.com, delcinemusic@gmail.com
Melissa Ellen Dean: melissadeanesq@gmail.com, melissa@minardilaw.com
Natalie S Koski-Karell: nskoskikarell@gmail.com
Deja Andrea Correia: deja@correia.law

s/ Caroline Anais Olsen
Troy L. Booher
Caroline Anais Olsen
ZIMMERMAN BOOHER
*Attorneys for Appellants*

33