FILED
United States Court of Appeals
Tenth Circuit

October 5, 2026

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BRIDGER LEE JENSEN; SINGULARISM; PSYCHE HEALING AND BRIDGING,

Plaintiffs - Appellees,

v.

UTAH COUNTY; PROVO CITY; JEFFREY GRAY,

Defendants - Appellants.

TROY BEEBE; BRIAN WOLKEN; JACKSON JULIAN,

Defendants.

------------------------------

CHURCH OF DIRECT EXPERIENCE, INC.; DEJA CORREIA, ESQ.; NATALIE KOSKI-KARELL, ESQ.,

Amici Curiae.

No. 25-4115

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:24-CV-00887-JNP-CMR)**

---

Caroline Anais Olsen, Zimmerman Booher, Salt Lake City, Utah (Troy L. Booher, Zimmerman Booher, Salt Lake City, Utah; Mitchell A. Stephens, Justin L. James, and Dillon P. Olson, James Dodge Russell & Stephens, P.C., Salt Lake City, Utah; and J. Brian Jones, Gary D. Millward, Nicholas Muhlestein, and Richard A. Roberts, Provo City Attorney's Office, Provo, Utah, with her on the briefs), for Defendants-Appellants.

Tanner J. Bean (Jacqueline M. Rosen, with him on the brief), Fabian VanCott, Salt Lake City, Utah, for Plaintiffs-Appellees.

Melissa E. Dean, The Law Office of Melissa Dean, PLLC, Orlando, Florida; David A. Carn, Gadsden, Alabama; and Ronald W. McNutt, Nashville, Tennessee, filed an amicus curiae brief for Church of Direct Experience, Inc., in support of Plaintiffs-Appellees.

Deja Correia, San Diego, California, and Natalie Koski-Karell, La Mesa, California, filed an amicus curiae brief for themselves in support of Plaintiffs-Appellees and affirmance of the district court's decision.

---

Before **BACHARACH**, **EBEL**, and **FEDERICO**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

---

This appeal involves the intersection between the exercise of religion and a state's authority to criminalize drug use. Individuals can freely exercise their religion (U.S. Const. amend. I), and states can criminalize drug use (*Robinson v. California*, 370 U.S. 660, 664 (1962)). But what happens when a religious tenet includes the use of a drug that is otherwise prohibited under a state's criminal law? Answering that question here involves procedural and substantive inquiries.

The procedural inquiry grows out of a religious leader's use of the drug in religious rituals. Can the district court enjoin prosecution of the religious leader in state court? We answer *no*.

The substantive inquiry involves the scope of the right to freely exercise one's religion. This inquiry arises because a state allowed qualified healthcare systems to use an experimental drug under a regulatory scheme and disallowed use for religious purposes without medical oversight. Does this distinction violate the right to freely exercise a religion? We again answer *no*.

## I. Religious use of psilocybin leads to state criminal proceedings and a federal injunction.

The plaintiffs include Mr. Bridger Lee Jensen, who founded a religion called *Singularism*. Singularism's adherents, known as *voyagers*, participate in a religious ceremony that includes the use of a drug called *psilocybin*. This drug is prohibited under Utah law. *See* Utah Code §§ 76-18-207(2) (criminalizing possession of a controlled substance), 58-37-108(2)(a)(iii)(Y) (designating psilocybin as a controlled substance).

Authorities learned that the voyagers were using psilocybin and seized over 450 grams. Two days after the seizure, local police wrote the landlord for Singularism, requesting eviction on the ground that the drug use constituted a nuisance. Within a week, Mr. Jensen and Singularism sued in state court; and the case was removed to federal district court.

After the removal, the federal district court granted a temporary restraining order to Mr. Jensen and Singularism, requiring the return of their records and psilocybin. Days later, state authorities charged Mr. Jensen with drug crimes. The charges led Mr. Jensen to move for an injunction against the state criminal proceedings, and the federal district court granted this motion and enjoined state authorities from prosecuting Mr. Jensen to avoid a likely violation of the First Amendment.[1]




## II. The federal district court erred by enjoining the state criminal proceedings.

The state authorities challenge the injunction on two grounds:

1. The district court should have abstained in light of the ongoing criminal proceedings in state court.

2. The filing of criminal charges didn't violate the First Amendment.

We agree.

---

[1] The injunction applied to defendants Utah County and Utah County Attorney Jeffrey Gray. The Utah County Attorney's Office had brought the criminal prosecution on behalf of the State of Utah.

**A. The district court should have abstained.**

A federal district court must ordinarily abstain from interfering with criminal prosecutions in state court. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669–70 (10th Cir. 2020); *see generally Younger v. Harris*, 401 U.S. 37 (1971).[2] The district court declined to abstain, and we conduct de novo review. *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024).

Abstention is generally required if

- a criminal proceeding is ongoing in state court,
- "the state court provides an adequate forum" to consider the claims, and
- "the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

---

[2] Federal courts can't enjoin state proceedings unless a federal statute authorizes the injunction. 28 U.S.C. § 2283. Mr. Jensen and Singularism base authorization of an injunction on two federal statutes:

1. 42 U.S.C. § 1983
2. 28 U.S.C. § 1446(d).

The parties agree that 42 U.S.C. § 1983 expressly authorizes an injunction to restrain a constitutional violation. *See Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972). Despite that agreement, the parties clash over whether 28 U.S.C. § 1446(d) provides additional authorization for an injunction. We need not resolve that disagreement given the express authorization in § 1983.

*Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019). The parties agree that these requirements are satisfied. But Mr. Jensen and Singularism contend that

- the state authorities waived an argument for abstention and acted in bad faith and in a harassing manner and
- continuation of the criminal proceedings would result in irreparable injury.

We reject these contentions.

**1. Waiver**

Mr. Jensen and Singularism argue that the state authorities waived their argument for abstention by

- declining to object to dismissal of the prosecution in state court,
- removing the civil proceeding from state to federal court, and
- pursuing the constitutional issues in the civil case after the removal.

**Failure to Object**

According to Mr. Jensen and Singularism, the state authorities waived their argument for abstention by failing to oppose dismissal of the prosecution in state court. But the state authorities had no choice because the federal district court had ordered them to stop prosecuting Mr. Jensen. Appellants' App'x vol. 5, at 193; *see Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply

promptly with the order pending appeal."). Because the state authorities couldn't object, their silence didn't operate as a waiver. *Cf.* Utah R. Civ. P. 46 (stating that when a party lacks an opportunity to object, the absence of an objection doesn't prejudice him); Utah R. Civ. P. 81(f) (stating that the Utah Rules of Civil Procedure generally apply in criminal cases in the absence of another applicable statute or rule).

**Removal**

Mr. Jensen and Singularism also argue that the state authorities waived an argument for abstention by removing the civil action to federal court. The district court credited this argument, reasoning that the defendants had voluntarily submitted to federal jurisdiction rather than litigate the constitutional issues in the state civil case. This reasoning conflates the civil and criminal cases.

*Waiver* may take place when a party expressly urges the federal court "to proceed to an adjudication of the constitutional merits" in lieu of the state forum. *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 626 (1986). For example, the Supreme Court declined to address abstention after state authorities had chosen not to "press the Younger abstention claim" in lieu of "a more expeditious and final resolution of the merits of the constitutional issue." *Brown v. Hotel & Rest. Emps. Int'l Union Loc. 54*, 468 U.S. 491, 500 n.9 (1984); *see also Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 479–80 (1977) (concluding that the

state had voluntarily submitted a constitutional issue to a federal forum by resisting application of abstention). Similarly, a party may arguably waive abstention by moving a case to federal court when movement to a federal forum would strip the court of power to issue a remedy. *Cf. Guttman v. New Mexico*, 325 F. App'x 687, 693 (10th Cir. 2009) (nonprecedential, concluding that a state waived *Younger* abstention by litigating the case in federal district court without asking the court to abstain). Here, however, movement of the civil case from state to federal court didn't affect the court's power to enjoin the criminal case.

For the constitutional claims, two cases existed in state court before the removal: One was the state criminal case brought by the State; the other was the state civil case brought by Mr. Jensen and Singularism. Mr. Jensen and Singularism point out that the state authorities could have litigated the constitutional issues in the civil case when it was in state court. But even if the defendants hadn't removed the civil case, the state court couldn't have enjoined the state criminal proceedings. *See Nielson v. Schiller*, 66 P.2d 365, 367–68 (Utah 1937) (stating that a Utah district court couldn't control the exercise of jurisdiction in a court of coordinate jurisdiction); *see also* John Works, *Courts & Their Jurisdiction* 69 (1894) (stating that "one court of co-ordinate jurisdiction will not restrain, by injunction, proceedings previously instituted in another court"). So the

state authorities didn't waive abstention as to the criminal case by removing the civil case from state court to federal court.[3]

**Litigation Actions**

Mr. Jensen and Singularism suggest that we should consider not only the removal itself, but also the state authorities' actions in the federal litigation. This suggestion consists of two sentences asserting that "the government voluntarily submitted to the federal forum, waiving any ability to raise abstention" by

- "failing to raise . . . abstention in the context of the [temporary restraining order] or preliminary injunction,"
- "filing a motion for expedited discovery,"
- "filing a motion to stay the district court's [temporary restraining order],"
- "asking the district court to determine the constitutional merits by filing a motion to dismiss," and
- "not appealing the [temporary restraining order] or preliminary injunction or rais[ing] [abstention] in related briefing."

[3] Regardless of a potential waiver, we could invoke abstention sua sponte. *Morrow v. Winslow*, 94 F.3d 1386, 1390–92 (10th Cir. 1996); *accord Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 518 (1st Cir. 2009) (stating that the court would consider "defendants' abstention arguments on the merits," "despite the possibility of waiver," in light of the court's authority to consider abstention doctrines sua sponte and "the important interests underlying [them]").

Appellees' Resp. Br. at 47. But Mr. Jensen and Singularism don't explain how these actions would have constituted an express request to take the constitutional issues away from the court in the state criminal proceedings.

Granted, we've said in an unpublished opinion that "litigating in federal court for" more than "six years" without ever raising abstention despite "numerous opportunities" might indicate voluntary submission to federal jurisdiction despite the absence of an express waiver. *Guttman v. New Mexico*, 325 F. App'x 687, 693 (10th Cir. Apr. 28, 2009) (unpublished). But the litigation activities in the civil case didn't undermine the state authorities' consistent efforts to force litigation of the constitutional issues in the state criminal case. So the state authorities' litigation activities in the federal civil case didn't waive an argument for abstention as to the state criminal case.

**Summary**

We conclude that the state authorities didn't waive abstention by declining to object to a motion to dismiss the prosecution, removing the civil action to federal court, or proceeding in the federal litigation.

**2. Exceptions to Abstention**

Federal district courts should ordinarily abstain from enjoining state criminal cases. *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019). But exceptions exist when

- a state official brings a prosecution in bad faith or to harass or

- the prosecution threatens an irreparable injury.

*Id.* at 1258–59.[4]

Mr. Jensen and Singularism invoke both exceptions and bear a "heavy" burden of proof. *Phelps v. Hamilton*, 59 F.3d 1058, 1066 (10th Cir. 1995). The district court concluded that Mr. Jensen had satisfied these exceptions, and we conduct de novo review over that conclusion. *See* p. 5, above.

**Bad Faith or Harassment**

We consider three factors when deciding whether a state prosecution was brought in bad faith or to harass:

1. "whether [the state prosecution] was frivolous or undertaken with no reasonably objective hope of success,"

2. "whether [the state prosecution] was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights," and

3. "whether [the state prosecution] was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions."

---

[4] An exception also exists when a prosecution is "based on a flagrantly and patently unconstitutional statute." *Winn*, 945 F.3d at 1259 (quoting *Phelps v. Hamilton*, 59 F.3d 1058, 1064 (10th Cir. 1995)). But Mr. Jensen and Singularism don't invoke this exception.

*Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce*, 240 F.3d 871, 877 (10th Cir. 2001). Each factor weighs against a finding of bad faith.

First, the district court acknowledged that the prosecution had not been frivolous. After all, Mr. Jensen had admittedly distributed a controlled substance. So the first factor cuts against a finding of bad faith or harassment.

Second, Mr. Jensen and Singularism haven't argued that the state pursued the prosecution to retaliate or target membership in a suspect class. So this factor also cuts against a finding of bad faith or harassment.

Third, Mr. Jensen and Singularism haven't shown harassment or abuse of prosecutorial discretion. Mr. Jensen and Singularism complain that

- investigators obtained a search warrant after being invited to tour Singularism's spiritual center,
- a media spokesperson told a local news station that the city viewed the use of psilocybin as unprotected under the Utah Religious Freedom Restoration Act, and
- state authorities made inflammatory accusations in the civil litigation, disobeyed the temporary restraining order by bringing criminal charges, and requested overly broad discovery.

These complaints lack supporting evidence in four respects.

First, the district court concluded that the state authorities had brought the criminal charges in state court to obtain a more favorable

forum after the federal court granted a temporary restraining order. But the district court elsewhere explained that the temporary restraining order didn't prevent a prosecution in state court:

> Well, my order said nothing about criminal prosecution. I have no opinion with respect to what would happen if [the state authorities] engaged in criminal prosecution. I suppose under the theory that [the state authorities] articulated, the way [the state authorities] thought things would work is that if a criminal prosecution were filed, then the [Religious Freedom Restoration Act] or the First Amendment or Utah Constitution Freedom of Religion Claim could be raised as an affirmative defense.
>
> I suspect that if, in fact, [the state authorities] file a criminal prosecution, that might happen, and it may also be that this [temporary restraining order] may be offered into evidence in the criminal prosecution, but I'm not enjoining any criminal prosecution.

Appellants' App'x vol 7, at 249–50.

Second, Mr. Jensen and Singularism complain about a statement to a news station. But the only evidence of this statement is a news article, which constituted inadmissible hearsay. *New Eng. Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989).

Third, Mr. Jensen and Singularism cite a letter from the police that threatened Singularism's landlord with abatement proceedings if Singularism were to remain at the property. For this threat, the police referred to evidence of illegal drug distribution, possession, and use.[5] This

---

[5] According to the police, the drug activity had created a nuisance. *See* Utah Code § 78B-6-1107 (defining nuisances); *see also id.* § 78B-6-1108

letter shows that the police deemed the drug activity illegal, not a desire to punish Mr. Jensen for exercising a constitutional right.

Fourth, Mr. Jensen and Singularism argue that the state authorities used discovery in the civil case to gather information for the criminal case. But Mr. Jensen and Singularism don't identify any of that discovery or present evidence of an improper request.[6]

Even if we were to credit the allegations, however, they don't suggest bad faith or harassment in the criminal proceedings themselves. These allegations involve a statement to the media, a threat to a landlord, and some abusive tactics in this litigation. Even if these allegations are credited, they wouldn't suggest bad faith or harassment in the criminal case itself.

Given the three factors, we conclude that Mr. Jensen and Singularism didn't satisfy their heavy burden to prove bad faith or harassment in the criminal proceedings.

**Threat of Irreparable Injury**

---

(authorizing a civil action to abate a nuisance through the automatic eviction of a tenant).

[6] In addition, Mr. Jensen and Singularism point to the state authorities' objection to a preliminary injunction, referring to an argument that Singularism doesn't satisfy our circuit's test for a "sincerely held religious belief." Appellants' App'x vol. 1, at 278-79, 283 (citing *United States v. Meyers*, 95 F.3d 1475 (10th Cir. 1996)).

Mr. Jensen and Singularism also invoke the exception for a threat of irreparable injury. The district court found such a threat from

- the potential loss of religious rights while the criminal proceedings continued,
- the loss of followers because of a search and the prosecution, and
- the injury to Singularism's relationship with its landlord because of the threatening letter.

For this exception, the injury must be "great and immediate." *Phelps v. Hamilton*, 59 F.3d 1058, 1065 (10th Cir. 1995). For example, the injury must involve more than the need to defend against a prosecution. *Winn v. Cook*, 945 F.3d 1253, 1259 (10th Cir. 2019). Nor is an injury enough when it could "be corrected through the pending state proceeding or on appeal." *Id.*

Under this standard, Mr. Jensen and Singularism haven't shown a threat of irreparable injury because Mr. Jensen could have asserted the constitutional claims in the state criminal case. *See W. Jordan City v. Goodman*, 135 P.3d 874, 878 (Utah 2006) (stating that the defendant could raise "any relevant defense to the charges, including challenges to the constitutionality of the statutes or ordinances under which he was convicted");[7] *State v. Arghittu,* 343 P.3d 709, 716 (Utah App. 2015)

---

[7] *Goodman* involved application of Utah's statutory procedures governing criminal proceedings in Utah's justice courts. A decision in justice court can be appealed to a Utah district court. *See* Utah Code

(stating that a defendant could challenge the constitutionality of the underlying criminal statute after a preliminary hearing). And if Mr. Jensen were convicted, he could renew his constitutional challenge in an appeal. *See State v. Theobald,* 645 P.2d 50, 51 (Utah 1982) (noting that the Utah Supreme Court had jurisdiction to review a challenge to the constitutionality of a criminal statute). Given these opportunities to raise the constitutional challenge in the state criminal case, continuation of the criminal proceedings wouldn't irreparably injure Mr. Jensen or Singularism. *See Winn v. Cook*, 945 F.3d 1253, 1259 (10th Cir. 2019) (stating that "we have consistently refused to find an exception to *Younger* when the injury could ultimately be corrected through the pending state proceeding or an appeal").

Despite the opportunities to litigate the constitutional issues in state court, the federal district court suggested that the criminal proceedings could deter other individuals from practicing Singularism. But this possibility wouldn't create a threat of irreparable injury. *See Younger v. Harris*, 401 U.S. 37, 50 (1971) (explaining that a chilling effect on free expression "should not by itself justify federal intervention"); *see also Daves v. Dallas Cnty.*, 64 F.4th 616, 624 (5th Cir. 2023) (en banc)

---

§ 78A-7-118(2). But the statutory procedures for justice courts wouldn't apply to Mr. Jensen's prosecution: Those courts lack jurisdiction over felony cases (Utah Code § 78A-7-106), and the State had brought felony charges against Mr. Jensen (Appellants' App'x vol. 3, at 66–67).

("*Younger* rejected . . . that adverse impacts on First Amendment rights alone could justify federal intervention . . . .").

We thus conclude that Mr. Jensen and Singularism didn't satisfy their heavy burden to prove a threat of irreparable injury.

**B. The district court erred in concluding the prosecution had likely violated the First Amendment.**

Even if abstention were unnecessary, an injunction would be proper only if the district court could rely on a violation of the First Amendment. The district court found a likely violation, pointing to the denial of a motion to dismiss for failure to state a valid claim.

The parties disagree about our jurisdiction to address the denial of the motion to dismiss. Regardless of that disagreement, however, we unquestionably have jurisdiction over the state authorities' challenge to the injunction. 28 U.S.C. § 1292(a)(1). That jurisdiction extends to the district court's reasons for granting the injunction, which include a likely violation of the First Amendment. *See Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1351–52 (10th Cir. 1989). We can thus consider the First Amendment issues through our jurisdiction to review the injunction.

Exercising that jurisdiction, we must consider the standard for assessing the claim under the First Amendment. Under this standard, "a law that is both neutral and generally applicable need only be rationally

related to a legitimate governmental interest to survive a constitutional challenge." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006); *see Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990). Mr. Jensen and Singularism concede that Utah's regulation of psilocybin is rationally related to a legitimate governmental interest, but urge a stricter standard on the ground that the law isn't generally applicable.[8]

A law isn't *generally applicable* if it either

- "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way" or
- "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions."

*Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021) (cleaned up). Mr. Jensen and Singularism argue that Utah law improperly favors secular conduct and invites individualized exemptions.

To address the possibility of preferable treatment, we compare the effects of religious and secular activities. If religious and secular activities pose comparable risks to the government's asserted interests, the law wouldn't be generally applicable if the state gave preferential treatment to

---

[8] Mr. Jensen and Singularism don't contest the law's neutrality.

the secular activities. *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam).

The state authorities assert an interest in public health by restricting the use of controlled substances. But Mr. Jensen and Singularism argue that the Utah law favors secular use of psilocybin even though it poses similar risks when used for religious and secular purposes. For this argument, Mr. Jensen and Singularism point out that the Utah law allows qualified healthcare systems to use psilocybin as an experimental treatment. Utah Code § 58-37-309(1)–(2).[9]

To assess the law's general applicability, we consider its "structure and implementation." *St. Mary Cath. Par. in Littleton v. Roy*, 154 F.4th 752, 768 (10th Cir. 2025), *cert. granted sub nom.*, *St. Mary Cath. Par. v. Roy*, 224 L. Ed. 2d 496 (U.S. 2026). Healthcare systems can use psilocybin only if they are qualified. To qualify, healthcare systems must

- be privately owned, be non-profit, be vertically integrated, and be operating at least 15 licensed hospitals in Utah,
- have a close affiliation with at least one of the listed institutions of higher learning, or
- be closely affiliated with a private postsecondary educational institution.

[9] The State also authorized Huntsman Mental Health Institute to study the therapeutic use of psilocybin to treat post-traumatic stress disorder. Utah Code § 26B-7-126. This institute is subject to regulations on safety and reporting.

Utah Code § 58-37-309(1)(b).

If the healthcare system qualifies, it may develop a behavioral health treatment program involving the use of psilocybin if "the healthcare system determines [psilocybin] is supported by a broad collection of scientific and medical research." *Id.* § 58-37-309(2). When doing so, the healthcare system must

- ensure that psilocybin is used "only under the direct supervision and control of the healthcare system and the healthcare system's [licensed] health care providers" and

- provide written reports that address drugs used, health outcomes of patients, side effects, and any other information necessary for the legislature to evaluate the medicinal value of psilocybin.

*Id.* § 58-37-309(3)–(4).

Moreover, licensed hospitals within healthcare systems must follow regulatory standards for pharmaceuticals and psychiatric services. Utah Admin. Code R432-100-25 (regulatory standards to dispense pharmaceuticals), R432-100-27 (regulatory standards for psychiatric services). For religious uses of psilocybin, however, Utah law lacks any statutory or regulatory protections.

Despite the absence of such protections, Mr. Jensen and Singularism insist that they voluntarily provided safeguards when administering psilocybin. But we consider general applicability based on the law's

"structure and implementation" rather than safeguards voluntarily undertaken. *St. Mary Cath. Par. in Littleton*, 154 F.4th at 768.[10]

Even if we were to look beyond the law's structure and implementation, Singularism recognized the superiority of safeguards involved in secular use, telling all users of psilocybin that they should obtain advice from licensed physicians: "The advice from Singularism's staff, despite being informed, is not a substitute for licensed and qualified professional medical advice, and we acknowledge their clinical advice supersedes our spiritual advice in medical and physical matters." Appellants' App'x vol. 4, at 138. That supervision was required for secular use, not religious use. *See* pp. 19–20, above. So even Singularism recognized the unique risks from unsupervised use among religious followers.

Given the state law, state regulations, and actual practice, Mr. Jensen and Singularism haven't shown a similarity in the health risks from secular and religious uses of psilocybin. To the contrary, the statutory and

---

[10] Granted, the Supreme Court has indicated that when secular activities are allowed and comparable religious activities are disallowed, the government must show that the religious activities are more dangerous "even when the same precautions are applied." *Tandon v. Newsom*, 593 U.S. 61, 63 (2021) (per curiam). But the Court made this statement when discussing whether a law is narrowly tailored, not whether the law is generally applicable. *Id.* at 62–63. Narrow tailoring is necessary if the law isn't generally applicable. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

regulatory safeguards render secular use less likely to undermine the government's interests than Singularism's religious use.

Mr. Jensen and Singularism also argue that the Utah law allows individualized exemptions. *See* p. 18, above. The district court didn't address this argument. But we could affirm on this ground only if it would have indisputably justified the injunction. *See United States v. Casados*, 26 F.4th 845, 853 (10th Cir. 2022) ("We may affirm on alternative grounds only when those grounds are dispositive, indisputable, and appear clearly in the record." (quoting *United States v. Schneider*, 594 F.3d 1219, 1227–28 (10th Cir. 2010)).

The argument by Mr. Jensen and Singularism isn't indisputably correct. Exemptions are considered *individualized* when they're based on subjective criteria. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1297 (10th Cir. 2004). For example, an exemption is subjective when the law provides amorphous standards like necessity or good cause. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 537 (1993) (necessity); *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021) (good cause). On the other hand, an exemption isn't subjective when it rests on "objectively defined categories of persons." *Axson-Flynn*, 356 F.3d at 1298.

Mr. Jensen and Singularism point out that a state agency may exempt individuals from medical licensing requirements to dispense controlled

substances when doing so would be "consistent with public health and safety." Utah Code § 58-37-105(2)(d). By restricting the exemption based on public health and safety, the law doesn't indisputably create an open-ended system of subjective decision-making. So we don't regard this argument for affirmance as indisputably correct.

* * *

For two reasons, we vacate the injunction.

First, the district court should have abstained rather than enjoin the state prosecution because Mr. Jensen and Singularism hadn't shown bad faith, harassment, or irreparable injury.

Second, the district court erred in finding a likely violation of the First Amendment. The Utah law doesn't treat secular activity more favorably than comparable religious activity. So we consider only the rationality of a connection to a legitimate governmental interest; and Mr. Jensen and Singularism don't question the rationality of that connection.

## III. The district court should decide whether the state law creates individualized exemptions.

The state authorities challenge not only the issuance of an injunction, but also the denial of the motion to dismiss. Because the district court hasn't issued a final order, state authorities couldn't ordinarily appeal the

denial of its motion to dismiss. *Decker v. IHC Hosps., Inc.*, 982 F.2d 433, 435 (10th Cir. 1992). But we may exercise pendent appellate jurisdiction

- when review of an issue that isn't ordinarily appealable (like denial of a motion to dismiss) is "necessary to ensure meaningful review" of an issue that is immediately appealable (like review of an injunction) or

- when review of the appealable and non-appealable issues is "inextricably intertwined."

*Brock v. Flower Foods, Inc.*, 121 F.4th 753, 771 (10th Cir. 2024) (quoting *Cummings v. Dean*, 913 F.3d 1227, 1235 (10th Cir. 2019)), *aff'd*, 146 S. Ct. 1358 (2026).

When reviewing the injunction, we had to consider whether the district court was right in finding a likely violation of the First Amendment. *See* Part II(B), above. That question mirrored the inquiry on the motion to dismiss. *See id.* So we exercise pendent appellate jurisdiction to review the decision not to dismiss the claim under the First Amendment. *See Munaf v. Geren*, 553 U.S. 674, 691 (2008) (stating that the Court could consider whether the action should be dismissed when appellate jurisdiction stemmed from review of an interlocutory injunction).

Reviewing that ruling, we note that we've already determined that the secular and religious uses of psilocybin pose different risks to the state's asserted interests. *See* Part II(B), above. That determination affects our review not only of the injunction, but also of the motion to dismiss.

Because risks differ for secular and religious uses, the district court shouldn't have equated these risks when denying the motion to dismiss.

But Mr. Jensen and Singularism also argue that a system of individualized exemptions would trigger strict scrutiny of the state law. The district court didn't decide this issue, and we've held that the argument by Mr. Jensen and Singularism isn't indisputably correct. *See id*. But we haven't said how the district court should decide that issue. Instead of deciding that issue, we remand for the district court to resolve this issue in the first instance. *See Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 653 (10th Cir. 2017) (stating that the better practice is to leave the matter to the district court to decide in the first instance when the issue was raised in district court and not decided).

Given that remand, we can't exercise pendent appellate jurisdiction to consider whether the Utah law allows individualized exemptions because the issue

- isn't inextricably intertwined with review of the injunction and
- wouldn't facilitate review of the injunction.

*See* pp. 23–24, above. So we lack pendent appellate jurisdiction to consider dismissal of the First Amendment claim based on individualized exemptions.

**IV. We lack jurisdiction to consider dismissal of the Fourth Amendment claim.**

The state authorities also argue that the district court should have dismissed the claim under the Fourth Amendment. Again, we can consider this claim only through pendent appellate jurisdiction. *See* Part III, above.

The state authorities argue that the issues involving the First and Fourth Amendments are intertwined. Even if the state authorities are right, however, pendent appellate jurisdiction would be inappropriate. In district court, the state authorities didn't seek dismissal of the Fourth Amendment claim based on its relationship to the claim under the First Amendment; the state authorities instead relied on immunity of law-enforcement officers. Nor did the district court rely on the Fourth Amendment when enjoining the state criminal proceedings. So entry of the injunction isn't "inextricably intertwined" with the appellate issue involving the Fourth Amendment. *Brock v. Flower Foods, Inc.*, 121 F.4th 753, 771 (10th Cir. 2024), *aff'd*, 146 S. Ct. 1358 (2026). Nor is review of the Fourth Amendment issue necessary to "ensure meaningful review" of the decision to grant the injunction. *Id.*; *see* pp. 23–24, above. We thus dismiss the appeal of the ruling on the motion to dismiss the claim under the Fourth Amendment.

* * *

Accordingly, we reverse and remand with instructions to the district court

- to vacate the injunction against the state criminal proceedings and

- to vacate the denial of the motion to dismiss the First Amendment claim on the issue of preferential treatment for secular use.

We dismiss the appeal involving the rulings on the motion to dismiss as to

- the existence of individualized exemptions on the First Amendment claim and

- the Fourth Amendment claim.[11]

---

[11] Though the district court relied on the First Amendment when enjoining the state criminal proceedings, the court relied on the Utah Religious Freedom Restoration Act to grant a preliminary injunction requiring the return of items seized in the search and prohibiting interference with Singularism's religious use of psilocybin. The state authorities haven't appealed the preliminary injunction or addressed the claims under the Utah Religious Freedom Restoration Act. So we express no opinion on the validity of the preliminary injunction.